GULF, COLORADO & SANTA FE RAILWAY COMPANY v. THOMAS DWYER.

No. 2912.

1. **Case Adhered to.** — Railway v. Dwyer, 75 Texas, 572, adhered to, being a former appeal in this case.

2. **Facts Discussed.**—The only evidence relied upon to show that the appellant authorized its connecting carrier to execute the bill of lading, or that it was ratified after its execution, is the circumstance that when appellee demanded the cargo of nails appellant's agent at Brenham, Texas, offered to deliver it upon payment of the freight specified therein, provided appellee would surrender the bill of lading and execute a receipt to the railway company for the overcharge. This fact is consistent with the theory that appellant was a party to the original contract; but it was equally consistent with the other theory that the object of the offer was to maintain the custom of the line of transit by respecting the contract of the connecting carrier and looking to it for reimbursement. The demand for the bill of lading, and of a receipt for the overcharge, tends to show that the latter was the motive which prompted the offer. The general freight agent of the railway testified fully and expressly denied the au-

thority of the railway company which executed the bill of lading to bind the defend-
ant. It was also shown that the charges paid by defendant on receiving the freight
were paid in ignorance of the terms of the freight contract. *Held*, that the testimony
was insufficient to show either its execution or ratification by the defendant.

3. **Construction of Penal Statutes.**—Every man is presumed to know the law;
and it would seem that before any one should be punished either in a criminal or
civil action for an act claimed to be penal the offense should be clearly defined, and
that any grave doubt as to the intention of the Legislature should be resolved in favor
of the defendant.

4. **Damages in Suit for Penalty.**—It being insisted that a carrier who receives
goods from another and pays the charges that have then accrued can only claim to
be reimbursed for the just and reasonable charges which were due for the carriage,
this is conceded as applying in an action for damages for detaining the goods, or for
the recovery of an overcharge, but the rule does not apply when a penalty is sought to
be recovered.

APPEAL from Washington. Tried below before Hon. JOHN ALEX-
ANDER, Special District Judge.

This is an appeal from a judgment for $9875, for statutory penalty
for refusal to deliver to plaintiff a cargo of nails upon tender of the
charges as upon the freight contract. This is the third appeal. The
facts are given in the reports thereof, 69 Texas, 707, and 75 Texas, 572.
No further statement is necessary.

*J. W. Terry*, for appellant.—1. It having been decided on the last
appeal of this case, and having thereby become the law of this case,
that appellant was not bound by the bill of lading and not bound to
deliver the freight on tender of charges as shown by the bill of lading,
unless it had previously authorized the execution of the bill of lading
or subsequently ratified its execution; and there being no evidence be-
fore the jury from which they could reasonably find that appellant had
authorized the execution of the bill of lading or ratified the execution
of the same, the court should have directed a verdict for the defendant;
and having failed to do so, should have granted a new trial on the
grounds herein stated. Railway v. Dwyer, 75 Texas, 572; Railway v.
Faber, 77 Texas, 153.

2. For the reasons stated in the first proposition, the court erred in
giving so much of the plaintiff's thirteenth special charge as instructed
the jury that plaintiff would be entitled to recover if the defendant
undertook to complete the transportation of the goods with full knowl-
edge of the terms of the bill of lading, or with reasonable opportunity
to know them, and such information as would put a prudent man upon
inquiry in relation thereto; and erred in giving so much of said charge
as is recited in this proposition, for the further reason that a connect-
ing line receiving goods from another line does not thereby become
bound by the bill of lading issued by the initial line, although the con-
necting line so receiving the goods has knowledge of the terms of such

bill of lading; in any event, such carrier does not become bound by the terms of the original bill of lading by undertaking to complete the transportation with reasonable opportunity to know the terms of the bill of lading, or with such information as would put a prudent man upon inquiry in relation thereto. Railway v. Dwyer, 75 Texas, 572; Railway v. Baird, 75 Texas, 256; Railway v. Williams, 77 Texas, 121; Rev. Stats., arts. 4251–4254, 4226, 4227; Hutch. on Carr., sec. 478; 2 Rorer on Railways, 1263; Schoul. on Bail., sec. 610; Knight v. Railway (R. I.), 9 Am. and Eng. Ry. Cases, 90; Railway v. Murray (Ga.), 11 S. E. Rep., 779; Crossman v. Railway, 149 Mass., 196; 6 Railway and Corp. Law Jour., 27; 40 Am. and Eng. Ry. Cases, 136; Schneider v. Evans, 25 Wis., 241; Vaughn v. Railway (R. I.), 9 Am. and Eng. Ry. Cases, 41; Whitney v. Bickford, 105 Mass., 271; Bird v. Railway, 72 Ga., 655; Potts v. Railway, 131 Mass, 455; Patten v. Railway, 29 Fed. Rep., 590; Briggs v. Railway, 6 Allen, 246; Wolf v. Hough, 22 Kans., 659; Wells v. Thomas, 27 Mo., 17; Price v. Railway (Colo.), 37 Am. and Eng. Ry. Cases, 626; Mfg. Co. v. Railway (N. C.), 42 Am. and Eng. Ry. Cases, 498.

3.   If the Act of May 6, 1882, Seventeenth Legislature, special session, page 35, be intended to apply to interstate shipments, then it is a regulation of interstate commerce.   It is, in effect, a regulation of the rate of freight to be charged on interstate shipments, and is an impediment to the free movement of commerce between Texas and other States and countries.   It affects directly articles of commerce, and is not a regulation of the instrumentalities of commerce only situated wholly within the State; and in so far as it affected interstate shipments it was inoperative and void, although Congress had not legislated upon the subject.   Railway v. People, 118 U. S., 557; Railway Comrs. v. Railway, 22 S. C., 220; Hardy v. Railway, 32 Kans., 698; Railway v. Comrs., 16 Am. and Eng. Ry. Cases, 1; Picard v. Pullman Co., 117 U. S., 34; New York v. Miln, 11 Pet., 102; Groves v. Slaughter, 15 Pet., 449; State Freight Tax, 15 Wall., 281; Hall v. De Cuir, 95 U. S., 485; Welton v. Missouri, 91 U. S., 485; Mobile v. Kimball, 102 U. S., 619; Ferry Co. v. Pennsylvania, 114 U. S., 196.

4.   The damages given by the Act of the Legislature of May 6, 1882— that is, an amount equal to the amount of the freight charges for every day the freight is held after tender or payment of the charges due as shown by the bill of lading—is evidently a penalty.  The mere fact that the Legislature used the term damages instead of penalty does not change the fact nor render it any less a penalty.   Where an act giving a penalty is repealed before the plaintiff's cause of action is merged into a judgment, it abrogates his right to the penalty.   The Act of Congress of February 4, 1887, entitled "An Act to regulate commerce," having taken effect before the plaintiff's cause of action was merged into a judgment, the Texas statute was thereby superseded and re-

pealed and the plaintiff's right to the penalty abolished. Cool. Const. Lim., 5 ed., 471, and cases cited in note; Wade on Retroactive Laws, sec. 301; Wall v. State, 18 Texas, 683.

*Bassett, Seay & Muse,* for appellee.—The defendant's right to withhold the goods until the payment or tender of its freight charge of $35 from McGregor to Brenham, which was shown to be lawful and customary, is conceded; and we do not deny its right to pay to connecting lines their lawful charges—that is, such as had been agreed on, or, in the absence of stipulation, such as were reasonable and proper—and to detain the goods until these also should be paid or tendered; but the burden of proof was on the defendant to show its right of detention; and in order to defeat a recovery it should have shown affirmatively that the advance charges paid by it were lawful, and that the sum of its rightful charges against the goods was in excess of the amount tendered; and there being no such proof, the judgment ought not to be disturbed.

(1) The defendant could only detain the goods for such charges as were lawful and proper. Fitch v. Newberry, 1 Doug. (Mich.), 1; Nordemeyer v. Loescher, 1 Hilt. (N. Y.), 499.

(2) The provisions of the Revised Statutes (titles "Carriers" and "Railroads") bearing on the question at issue may be summarized as follows: Article 4251 requires railway companies within the State to receive and transport over their lines upon request, at their customary and lawful rates, freights coming from connecting lines; but neither here nor elsewhere is the receiving company required to pay the freight charges of the delivering company. The collection of these is provided for and secured by article 4254, which declares, that railways interchanging business shall be trustees for each other to the extent of all moneys received on account of the joint business, and gives a lien to secure balances due from the one to the other. By article 279, carriers may refuse to receive freight offered for transportation until tender is made of their legal and customary rates of freight. A similar provision is found in article 4226. Connecting railways offering freight for transportation are not excepted from this provision. Under the safeguards provided by these articles, it is not in the power of one railway to force upon another the consequences of its own injudicious or unfortunate contracts.

(3) The defendant was under no obligation, therefore, statutory or otherwise, to prepay the advance charges claimed by the connecting line, and its action in making such payment was that of a mere volunteer (Saltus v. Everett, 20 Wend., 267); but its right of subrogation to such lien as the connecting carrier might lawfully assert is not denied.

(4) It was the duty of the defendant as receiving carrier to inquire into the correctness of the claim for advance charges, and the burden

of proof was on it to show not only that it had paid them, but that they were just and lawful charges. Bissell v. Price, 16 Ill., 408; Steamboat v. Craft, 25 Mo., 76; Travis v. Thompson, 37 Barb. (N. Y.), 236.

(5) As was said by Caton, J., in Bissell v. Price, supra: "He must see that the previous charges are reasonable before he is authorized to pay them; for it is not every charge which every extortioner through whose hands goods may pass in transit may see fit to impose on them that he is authorized to pay, and thus fix upon the owner a certain liability to that extent." The custom testified to by Murray, if sanctioned by the courts, would put the owner of goods completely at the mercy of any irresponsible carrier along the line. Travis v. Thompson, 37 Barb. (N. Y.), 240; Railway v. Marsh, 57 Ind., 505.

(6) There being no proof that the advance charges were in fact for the cost of transportation, or that they were just or reasonable, or that any inquiry was made by the defendant to ascertain whether or not they were proper charges against the goods, and no proof relating thereto being produced on the trial, the defendant has failed to show any cause for detaining the goods; and the plaintiff being entitled upon the undisputed facts to a verdict and judgment for the amount actually recovered, the alleged errors, if otherwise tenable, become immaterial, and the judgment ought not to be disturbed.

GAINES, ASSOCIATE JUSTICE.—This is the third appeal in this case. The first is reported in 69 Texas, 707; and the second in 75 Texas, 572. The nature of the suit is shown in the former opinions as reported in the volumes cited.

The assignments of error upon this appeal are numerous, but we do not consider it necessary to consider them in detail. Upon the second appeal we held that the act under which the penalty is attempted to be recovered in this case "only applies when the railway company that is sought to be charged in damages has either itself executed the bill of lading or has authorized another company to execute, or has ratified it by a voluntary act on its part." We also held in that opinion, that an acceptance of freight by a railway company from a connecting company, being compulsory under our statutes, could not be deemed a ratification of the bill of lading.

It is complained, that "the court erred in not granting a new trial for the reasons set up in the defendant's fifteenth ground of motion for a new trial, which is as follows: 'The verdict of the jury is contrary to the law and the charge given at the request of the defendant, and without evidence to support it, in this: that the uncontradicted and positive testimony shows that the bill of lading was never authorized by the defendant or ratified by it; that it was issued by a foreign road without the knowledge or consent of defendant, and that defendant had no knowledge of the bill of lading until after the mails arrived at

Brenham, and that the road which issued the bill of lading had no authority to contract for or on behalf of the defendant; that defendant received the nails in good faith, paying the $197.50 advance charges, and only demanding the same with its own legitimate charges of $35 added, and did not transport the goods under or by virtue of the bill of lading.' ''

We are of opinion that this assignment of error should be sustained. The testimony is somewhat voluminous, and we do not deem it necessary to set it out in detail. The only evidence relied upon to show that the appellant authorized its connecting carrier to execute the bill of lading, or that it was ratified after its execution, is the circumstance that when appellee demanded the carload of nails appellant's agent at Brenham, Texas, offered to deliver it upon payment of the freight specified therein, provided appellee would surrender the bill of lading and execute a receipt to the railway company for the overcharge. This fact is consistent with the theory that the appellant was a party to the original contract; but it is equally consistent with the other theory, that the object of the offer was to maintain the custom of the line of transit by respecting the contract of the connecting carrier and looking to it for reimbursement. The demand for the bill of lading and a receipt for the overcharge tends to show that the latter was the motive which prompted the offer. The evident purpose was to make a reclamation upon the company which executed the bill of lading; and while it may be presumed that the appellant only intended to make a reclamation for a proportionate amount of the overcharge, it is equally fair to presume that it intended to claim the whole. The circumstance therefore proves nothing. The appellant having it in its power to adduce evidence as to the relations between it and its connecting carrier, its failure to do so may have been a circumstance against it. But the appellant did not fail in this particular. Its general freight agent testified in the case very fully, and expressly denied that the company which executed the bill of lading for the transportation over the appellant's line had any authority to do so. There was no evidence to the contrary, except the circumstance above stated, if that can possibly be deemed such.

Now, we do not propose in this case to enter upon the debatable question of the intensity of proof when a penalty is sought to be recovered in a civil action. There is the highest authority for holding that in such cases the plaintiff must prove the facts which justify a recovery beyond a reasonable doubt. Chaffee v. United States, 18 Wall., 516.

The appellee contends, however, that the appellant was not bound to pay the freight charged in the way-bill when it received the car from the connecting line, and that therefore it was liable for the penalty for not delivering the goods upon tender of the freight shown by

the bill of lading. But upon full consideration of the question we decided in the former opinion that the statute applied only to carriers who were parties to the bill of lading, either by original contract or by ratification. The case shown by the testimony illustrates the correctness of that ruling. The agent of appellant at the point of connection testified, that when he received the car of nails from the connecting road he had no knowledge of the bill of lading, and that he paid the accrued charges as shown by the way-bill, that being his only guide. The charges having been paid in good faith, was it intended to punish the carrier at the end of the line for refusing to deliver the freight until he was given the bill of lading, together with a statement from the consignee that the goods have been delivered without payment of the overcharge, so that he might reclaim it of the first carrier? It would seem not. If the carrier at the point of destination has either executed the bill of lading or has authorized its execution, he is presumed to know its contents, and he can not shield himself from the penalty of the statute for a refusal to deliver the goods upon tender of the freight as shown by such bill, by claiming that there has been a mistake. But in a case in which the bill of lading has been given without his authority mistakes are likely to occur, and we do not think it was intended to punish the last carrier when he refuses to deliver the goods until he has the means of protecting himself from the consequences of such mistakes. Every man is presumed to know the law, and it would seem that before any one should be punished, either in a criminal or a civil action, for an act claimed to be penal, the offense should be clearly defined, and that any grave doubt as to the intention of the Legislature should be resolved in favor of the defendant.

Counsel for appellee have cited cases to show that a carrier who receives goods from another and pays the charges which have then accrued can only claim to be reimbursed for the just and reasonable charges which were due for the carriage. This rule we have no disposition to gainsay; and it may be that if appellee were suing merely for damages for the detention of his goods or for the recovery of an overcharge he had paid, it would have been incumbent upon the appellant to show that the charges paid at the point of connection were reasonable and proper. We have to deal with the construction of a penal statute, and we think the cases cited not in point. They were ordinary civil actions.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 25, 1892.