GREEN v. PRINCE. (No. 5945.)

(Court of Civil Appeals of Texas. Austin. Jan. 26, 1918. Rehearing Denied Feb. 27, 1918.)

1. APPEAL AND ERROR ☞1175(6)—REVERSAL —RENDERING JUDGMENT—AGREED FACTS.

In a case tried upon agreed facts, where the trial court does not render the proper judgment, it is the duty of the court of Civil Appeals to render the judgment which should have been rendered by the trial court.

2. LANDLORD AND TENANT ☞321—RENTING ON SHARES—VALIDITY OF CONTRACTS.

Rev. St. 1911, art. 5475, as amended in 1915 (Acts 34th Leg. c. 38 [Vernon's Ann. Civ. St. Supp. 1918, art. 5475]), prohibits leases of land for agricultural purposes where the landlord furnishes everything except the labor, and the tenant furnishes the labor, and the landlord, directly or indirectly, charges a rental of more than one-half of the value of the grain or cotton raised on the land, and gives the tenant a right of action for double the amount of rent or money received or collected by the landlord in violation or evasion of that article. A landlord, in addition to furnishing everything necessary to produce a cotton crop, agreed to and did furnish a house for the tenant on a different tract of land, one-fourth of an acre of land for garden purposes, pasturage for a horse, and a wagon and team to haul firewood, and also paid the expenses of ginning the cotton, made arrangements whereby the tenant could purchase supplies on the landlord's guaranty, and furnished the tenant employment when not engaged in cultivating and harvesting the cotton crop. *Held* that, though the landlord received one-half of the cotton and all of the cotton seed, the statute did not apply where it did not appear that when the contract was made the value of the cotton seed and of the things agreed to be done by the landlord was agreed upon, and that the agreed value of the cotton seed exceeded the value of the landlord's obligations, though the parties designated the cotton seed as rental, since it nevertheless constituted part at least of the consideration for the landlord's obligations in addition to furnishing everything needed to raise the crop.

3. PENALTIES ☞33—ACTIONS FOR PENALTIES —BURDEN OF PROOF.

One suing to recover a statutory penalty must produce proof that brings his case strictly within the terms of the statute.

Appeal from Travis County Court; D. J. Pickle, Judge.

Action by Henry Prince against Wyatt Green. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

White, Cartledge & Wilcox and J. B. Robertson, all of Austin, for appellant. Faulk & Monroe, of Austin, for appellee.

KEY, C. J. This case was disposed of in the trial court upon the following agreed statement of facts:

"(1) That on or about the 1st day of December, A. D. 1915, plaintiff and defendant, both being citizens of Texas and of the United States, entered into a contract by the terms of which defendant rented and leased to plaintiff for a period of one year, beginning on the 1st day of January, 1916, and ending on the 31st day of December, 1916, 15 acres of black prairie land, all of which was in cultivation and belonging to defendant, located about four miles from the town of Creedmoor, in Travis county, Texas, together with one small dwelling house to be occupied by plaintiff and his family during said term and while engaged in preparing said land and cultivating and gathering a crop on same during said term; that by the terms of said contract it was agreed that plaintiff was to furnish the labor necessary to produce a cotton crop on said land during said term, and defendant was to furnish all teams, tools, and other necessary equipment and appliances for cultivating and producing and harvesting a crop of cotton on said land. It was further expressly agreed by the parties that plaintiff was to pay to defendant as rent for the use and occupancy of said land and premises during said term one-half of all lint cotton, or one-half of the proceeds of the sale of such lint cotton, produced on said land during said term, and that plaintiff was to pay to defendant as a part of such rental all of the cotton seed produced on said land during said term; that the residence agreed to be furnished plaintiff is situated upon another and different tract of land situated

about 800 yards from the 15-acre tract. It was further agreed as a part of said contract that the defendant was to pay all ginning charges on cotton produced upon said land during the term of said lease, and was to make arrangements whereby plaintiff could secure from a mercantile establishment in the neighborhood groceries and other supplies reasonably needed by him and his family during the term of said lease, the defendant to guarantee payment therefor. Defendant, as a part of said contract, further agreed to hire the plaintiff to work upon other land owned by him in said neighborhood during the term of said lease and during the time plaintiff was not occupied in labor upon said 15-acre tract, and to pay to plaintiff for such labor the sum of $1 per day. Defendant further agreed to permit the plaintiff to turn one horse owned by plaintiff into defendant's pasture during the term of said lease without charge, the reasonable market value of such privilege at said time and place being $1 per month. Plaintiff in said contract was given the privilege of using and cultivating during the term of said lease one-fourth acre of land in another tract for the purpose of cultivating and raising vegetables, all vegetables raised thereon to belong to plaintiff; defendant further agreeing to permit plaintiff to use in cultivating said one-fourth acre tract all implements, teams, and tools reasonably necessary therefor. It was further agreed that defendant was to furnish plaintiff the use of a wagon and team for hauling wood necessary for the use of himself and family.

"(2) That pursuant to the terms of said contract the plaintiff immediately entered into possession of said land and premises, and prepared for cultivation and planted and cultivated and harvested a crop of cotton on said 15 acres of land during said term, and actually produced on said land during said term 6½ bales of lint cotton, which said lint cotton was of the reasonable market value of, and was actually sold for, the sum of $507.54; that the defendant paid to and for the plaintiff the sum of $253.77, same being one-half of said amount of $507.54 received from the sale of said lint cotton, as per the terms of said contract; that plaintiff produced on said land during said term cotton seed aggregating 5,525 pounds, all of said cotton seed being delivered by plaintiff to defendant in Travis county, Texas, the defendant retaining as a part of the rent for said land all of said cotton seed and all of the proceeds of the sale thereof, in accordance with the terms of said contract; that the reasonable market value of said cotton seed at the time same was delivered to the defendant was the sum of $110.50; that the defendant paid for the ginning of said cotton so produced by plaintiff the sum of $25.54.

"(3) That the plaintiff is a married man with a family, and has been engaged in the occupation of farming continuously for several years; that plaintiff furnished all the labor for preparing said land for a crop, and for planting, cultivating, gathering, and delivering said crop of cotton and cotton seed to the defendant, and did and performed all of the acts agreed to be performed by him under the terms of said contract; that the defendant furnished to plaintiff the 15 acres of cultivated land, the dwelling house upon a separate tract, procured groceries and other supplies needed by plaintiff and guaranteed the payment therefor, employed plaintiff in work upon other land during such times as plaintiff was not engaged in labor upon the 15-acre tract and paid to plaintiff therefor the sum of $1 per day, furnished to plaintiff pasturage for one horse without charge and furnished to plaintiff the one-fourth acre of land in another tract for a garden, and furnished the necessary tools and teams to cultivate same, furnished plaintiff with the use of a wagon and team for hauling wood, and did and performed

all the acts required of him under the terms of said contract.

"(4) That the reasonable market value of said tract of 15 acres at the time said contract was made was $150 per acre; that the reasonable market value of said dwelling house at said time was $250; that the reasonable market value at said time and place of the teams, tools, and implements exclusively used by plaintiff and furnished to him by defendant was $250, making an aggregate value of land, house, teams, tools, and implements of $2,750; that under said contract defendant was required to and did furnish feed for teams used as aforesaid, seed for planting, blacksmithing in connection with cultivation of said tract, cotton sacks for gathering said cotton, ginning of said cotton, and had to pay taxes due the state of Texas and the county of Travis, the aggregate of such expenses being $204.25, all of which was actually and necessarily incurred by defendant in carrying out his said contract with plaintiff; that all of said sums paid were reasonable prices for the articles and services procured; that the aggregate revenue received by defendant from the sale of his portion of the lint cotton and all the cotton seed produced on said tract during the term of said lease was $363.47; that, after deducting the expenses aforesaid, the net revenue from said tract of land for said term was $159.22, the same being a net revenue of $5^7/_{10}$ per cent. on the market value of land and residence, teams, tools, and implements exclusively used thereon as aforesaid; that the cotton and cotton seed raised during said year sold at a much greater price than the average price for many years preceding; that under ordinary conditions and with average prices the said land, teams, tools, and implements would produce a much smaller net return on their value under a contract similar to that herein involved; that if defendant be not permitted to retain the value of all the cotton seed produced on said tract of land during said year, his return on said market value will still further be reduced; that the current rate of interest in Texas at the time said contract was made and ever since was and is 8 per cent. per annum; that said tract of 15 acres is rich black land, free from noxious weeds, and easily cultivated; that there was and is one schoolhouse within 200 yards of said land and another within one mile, each being public free schools, with proper equipment and competent teachers; that said land is easily accessible to churches, markets, and cotton gins; that good roads lead from said tract to all neighboring towns, and said land has an abundant supply of pure water; that the surroundings are healthful, and the neighborhood a desirable one in which to live; that there is and was at said time in Travis county and in many sections of Texas a large quantity of land of equal productiveness, which will, when rented on the same terms as those embodied in the contract involved herein, produce as much rental revenue per acre as said tract, but which was at said time, and is, by reason of less desirable location and other conditions, of much less market value; that the cultivated agricultural land in Texas is divided into thousands of tracts of various sizes, owned by various people; that it was at said time and now is the universal practice of owners of such land either to rent it or to cultivate it themselves; that the restriction of rental that may be charged for agricultural land has not, will not, and cannot cause any additional land in Texas to be devoted to the production of cotton, grain, or other crops, or increase the production thereof, or affect the price ultimately paid by the consumer; that the agricultural land in Texas varies greatly in productiveness, ease and economy of cultivation, presence of insect pests, accessibility to schools, churches, markets, and towns, character of houses and improvements situated thereon and the conveniences and value thereof, and

much land is rented for agricultural purposes where no houses or improvements are furnished in connection therewith; that some of the land is situated in arid regions and some in regions with ample rainfall; some land is irrigated and some not, the former being of much greater value and commanding a higher rent; some land is situated in sections which are unhealthful; that social surroundings vary greatly, and strongly affect the market value of land; that, due to the above differences in conditions, the rental value of lands situated in Texas varies greatly."

### Opinion.

In 1915 the Legislature amended article 5475 of the Revised Statutes (Acts 34th Leg. c. 38 [Vernon's Ann. Civ. St. Supp. 1918, art. 5475]), which secured to landlords a preference lien where land is rented for agricultural purposes, by adding thereto the following language:

"Provided, however, this article shall not apply in any way nor in any case where any person leases or rents lands or tenements at will or for a term of years for agricultural purposes where the same is cultivated by the tenant who furnishes everything except the land, and where the landlord charges a rental of more than one-third of the value of the grain and more than one-fourth of the value of the cotton raised on said land; nor where the landlord furnishes everything except the labor and the tenant furnishes the labor and the landlord directly or indirectly charges a rental of more than one-half of the value of the grain and more than one-half of the value of the cotton raised on said land, and any contract for the leasing or renting of land or tenements at will or for a term of years for agricultural purposes stipulating or fixing a higher or greater rental than that herein provided for, shall be null and void, and shall not be enforceable in any court in this state by an action either at law or in equity, and no lien of any kind, either contractural or statutory, shall attach in favor of the landlord, his estate or assigns, upon any of the property named, nor for the purpose mentioned in this article; and provided, further, that if any landlord or any person for him shall violate or attempt to evade any of the provisions of this article by collecting or receiving a greater amount of rent for such land than herein provided, shall be collected or received by him upon any contract, either written or verbal, the tenant or person paying the same, or the legal representatives thereof, may, by an action of debt instituted in any court of this state, having jurisdiction thereof, in the county of the defendant's residence or in the county where such rents or money may have been received or collected, or where said contract may have been entered into, or where the party or parties paying the same resided when such contract was made, within two years after such payment, recover from the person, firm, or corporation receiving the same, double the full amount of such rent or money so received or collected."

In the case at bar, Prince, the tenant, sued the landlord, Green, to recover the penalty prescribed by that act. The trial court rendered judgment for the plaintiff, and the defendant has appealed, and seeks reversal of the judgment, first, upon the ground that the amendment to the statute passed in 1915, and set out above, is violative of certain provisions of both the federal and state Constitutions; and, second, that if such is not the case, and the amendment is valid legislation, still, when it is applied to the

facts agreed upon in this case, appellee is not entitled to recover, and judgment should be rendered for appellant.

[1] We have reached the conclusion that appellant's second contention is correct, and therefore it is not necessary for this court to pass upon the constitutional questions presented by appellant's counsel, and we express no opinion upon that subject. In other words, if it be conceded that the statute is free from constitutional objection, and is a valid law, still, if the facts proved fail to show that the plaintiff was entitled to recover the penalty sued for, the trial court should have rendered judgment for the defendant, and, as the case was tried upon agreed facts, it becomes the duty of this court to render the judgment which should have been rendered by the court below.

[2] Turning, then, to the agreed facts, and applying to them the statute in question, is it made to appear with that certainty required in suits of this character that the plaintiff was entitled to recover the penalty which is prescribed by the statute? By the terms of the rental contract, as alleged in plaintiff's petition, it was agreed that the plaintiff was to furnish the labor necessary to produce a cotton crop on the 15-acre tract of land, and defendant was to furnish all teams, tools, feedstuffs and other necessary equipment and appliances for cultivating, producing, and harvesting a crop of cotton on the land. It further appears from the contract, as disclosed by the statement of facts, that the plaintiff was to furnish to the defendant, not only the 15 acres of land which defendant was to cultivate in cotton, but was also to furnish him a residence upon another and different tract of land situated about 800 yards from the 15-acre tract, one-fourth of an acre of land to be used for garden purposes, pasturage for one horse, and a wagon and team to haul firewood for the use of himself and family; was to pay the expenses of ginning the cotton; was to make arrangements by which the plaintiff could purchase supplies on credit, and was to guarantee the payment thereof; and was to furnish the plaintiff employment, and pay him $1 per day therefor during the time that he was not engaged in cultivating and harvesting the cotton crop. The consideration which rendered binding the foregoing obligations assumed by the defendant was the obligation upon the part of the plaintiff to deliver to the defendant one-half of the cotton and all of the cotton seed produced upon the 15 acres of land.

The plaintiff's suit is based upon the theory that the contract by which the defendant was to have half of the cotton and all of the cotton seed was in violation of the statute, and that when the defendant received the same he became liable for the prescribed penalty. In other words, appellee's contention seems to be that the statute prohibited

the defendant from receiving more than one-half of what was produced upon the land, and, therefore that when he contracted for and received all of the cotton seed, as well as half of the cotton, he violated the law and became liable for the penalty. That contention might be sound if the defendant, as landlord, had not furnished more than he was required to do by the statute, or by the contract, as alleged in the plaintiff's petition. A fair and reasonable construction of the statute shows that it was intended to apply to general conditions in which land was rented for agricultural purposes upon one of two kinds of contract; viz., where the tenant furnishes labor, teams, implements, and all other things necessary to make and harvest the crop; and the other where the tenant furnishes the labor only, and the landlord furnishes the other things necessary to make the crop. The plaintiff has sought to bring this case within the latter class, but the proof shows that the defendant, who was the landlord, obligated himself to do more than furnish those things that were necessary to raise a crop upon rented premises; and for those additional things he had the right to contract for compensation in addition to his right to contract for one-half of the products of the land. The additional things referred to, and for furnishing which the landlord had the right to contract for compensation, consisted of the use of a house situated upon a different tract of land, payment of all the expenses of ginning, when, as between him and the plaintiff, he was only liable for one-half, furnishing the plaintiff pasturage for one horse, shown to be worth $1 per month, furnishing him one-fourth of an acre of land as a garden, a wagon and team to haul firewood, and obligating himself to furnish the plaintiff employment at a stipulated price, and to become a surety to enable him to buy his supplies. The proof fails to show that any of these things were necessary to make and harvest the crop that was made and harvested on the land, and therefore it is not shown that the defendant did not have the right to contract for and receive all the cotton seed as compensation for the things referred to.

[3] It is a well-settled principle of law, often announced and applied by our own Supreme Court, that when an action is brought for the purpose of recovering a statutory penalty, the plaintiff must produce proof that brings his case strictly within the terms of the statute. The rule referred to applies, even though in the main the statute may be remedial. For instance, in Schloss v. A., T. & S. F. Ry. Co., 85 Tex. 601, 22 S. W. 1014, which was a penalty suit under a statute which makes it unlawful for railroads to demand or receive a greater sum for transporting freight than is specified in the bill of lading, and prescribes a penalty which may be recovered by the owner of the freight when the railroad refuses to deliver it after tender has been made of all charges shown by the bill of lading. In that case the charges were not specified in, or shown by, the bill of lading, but were specified and shown in the expense account rendered to the owner by the railway. In denying the right of plaintiff in that case to recover, among other things the Supreme Court said:

"This act is both remedial and penal. In Sutherland on Statutory Construction it is said: 'The general purpose and aim of a statute may be remedial, as where they provide punitive compensation to the injured party. But the provisions that enforce the wrong for which a penalty is provided and those which define the punishment are penal in their character, and must be construed accordingly. A statute may be remedial in one part and penal in another.' Suth. on Stat. Con. § 208.

"For the shipper the act provides that, upon making payment or tender of the charges for transportation as shown in the bill of lading, he shall have possession of his goods; and in the third section the means of enforcing the right is given in the way of punitive damage. From this standpoint the statute is remedial. It was from the shipper's standpoint that the court viewed the act in Railway v. Harry & Bros., 63 Tex. 256, in which the right of the Legislature to enact the law for the benefit of the shipper was the question. As to the railway company it is penal, for in the first section it declares certain acts to be unlawful, in the second section it enjoins a duty, and in the third it denounces against the railway company a penalty for violating the previous sections.

"In the case of Railway v. Dwyer, 84 Tex. 198 [19 S. W. 470], the question was whether the bill of lading was such as is mentioned in the act so as to render the railway company liable, and from this standpoint the court declared the statute to be penal. Whether it be remedial or penal, it is certain that the appellant's right of action is strictly statutory. Without the statute, he had the right to recover compensation for the detention of his goods after payment or tender of the amount due. This right is not taken away or modified by this act. But without this statute he could not recover the damages or penalty specified in it. Therefore he must bring himself strictly within the provisions of the acts. Suth. on Stat. Con. § 398; De Witt v. Dunn, 15 Tex. 106; De la Garza v. Booth, 28 Tex. 478 [91 Am. Dec. 328]; Scogins v. Perry, 46 Tex. 111; Murray & Bro. v. Ry., 63 Tex. 407 [51 Am. Rep. 650]. * * *

"One of the leading purposes was to punish the failure to perform the duty enjoined by the law. The caption says that penalties are provided, and in the third section it is said that the railway company shall be liable to the owner of t... goods in damages, etc. Calling it damages does not change the character of it. The sum to be recovered is not in any respect compensatory for the injury sustained by the detention of the goods; the extent of the injury is not taken into account. It is an arbitrary sum, fixed, not according to the value of the property, nor governed by the value of their use, but by the sum due as shown by the bill of lading. It is a penalty in every respect, as much as if it had been so declared, and was intended as a punishment of the railway company for a violation of the law."

See, also, Railway Co. v. Campbell, 91 Tex. 551, 45 S. W. 2, 43 L. R. A. 225; T. & P. Ry. Co. v. Hughes, 99 Tex. 533, 91 S. W. 567.

We have not overlooked the fact that the agreed facts contain the recital that it was

expressly agreed by the parties "that the plaintiff was to pay to the defendant, as part of such rental, all of the cotton seed produced on said land during said term." But in construing the contract all of its terms and stipulations must be considered; and when that test is applied it cannot be doubted that appellee's promise to deliver to appellant all the cotton seed constituted at least part of the consideration for appellant's promise to do the things hereinbefore referred to that were not shown to be necessary to make and harvest the crop, and therefore it is immaterial that appellant's right to the cotton seed was designated by the parties as rent for the land. In the Schloss Case the statute designated the plaintiff's cause of action as damages, but the Supreme Court held that such designation could not change its character as a penalty, and that it lacked essential elements of damages. So in this case, whatever constituted the consideration for appellant's obligation to do things not necessary to producing and harvesting the crop was not in fact rental, and the parties so designating it did not make it such.

What was said in the Schloss Case is equally applicable to the instant case. While the facts show that the defendant contracted for more than one-half of the products of the land to be cultivated, it also shows that he obligated himself in several respects beneficial to the plaintiff beyond his agreement to furnish the land, teams, implements, and other things necessary to make and harvest the crop; and as the proof does not show that at the time the contract was made the value of the things referred to, and of the cotton seed thereafter to be raised, was agreed upon, with a result that the agreed value of the cotton seed was in excess of the value of the things referred to, it does not appear that the defendant contracted for or received more for the rent of the land than one-half of what was produced thereon. Hence we conclude that the agreed statement upon which the case was tried fails to show that appellant has violated the statute, and therefore the judgment of the court below is reversed, and judgment here rendered for appellant.

Reversed and rendered.

---

⊜⟝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes