CITY OF SAN MARCOS v. INTERNATIONAL & G. N. RY. CO. (No. 6024.)

(Court of Civil Appeals of Texas. San Antonio. May 1, 1918. Rehearing Denied May 29, 1918.)

1. RAILROADS ⟨⟩95(1)—STREET CROSSINGS—FAILURE TO REPAIR CROSSING—LIABILITY.

In city's action for penalty for railroad's failure to repair crossing after notice, the fact that in a condemnation suit by the city against the railroad the land involved was condemned did not estop the railroad from showing its true boundary which did not include part of the land, so that its repairing the street would not have connected with the city's improvements, and it was not liable for the penalty.

2. RAILROADS ⟨⟩95(8)—STREET CROSSINGS—IMPROVEMENTS—PENALTIES.

City seeking penalty for railroad's failure to construct street crossing under Rev. St. 1911, art. 1068, requiring railroads to keep roadbed and right of way at public street in proper condition, could not recover in the absence of demand for work on the roadbed as well as right of way, since one seeking benefit of penalty statute must bring himself strictly within its provisions.

Appeal from District Court, Hays County; Frank S. Roberts, Judge.

Suit by the City of San Marcos against the International & Great Western Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

See, also, 167 S. W. 292.

R. E. McKie, of San Marcos, for appellant. Fisher & Fisher, of Austin, and Dabney & King, of Houston, for appellee.

FLY, C. J. This suit was instituted by appellant to recover a penalty of $25 a week from appellee because of a failure to place and keep that portion of its roadbed and right of way, over or across which Guadalupe street in said city runs in proper condition for the use of the traveling public, due notice having been given that such work was needed. Appellee's defense as set out in the answer seems to be that, as the city had not done all that was necessary to be done to have the street ready for traffic, it could not compel appellee to perform its part of the

work, and that it would not be compelled to build a bridge or trestle across its right of way in order to close with the work done by the municipality. When the evidence had been introduced the appellee requested the court "to withdraw said cause from the jury and to render judgment in its behalf," which was accordingly done.

The evidence showed that Purgatory creek was to the south of the roadbed, and while Guadalupe street was completed to the roadbed on the north, it became necessary to trestle or bridge the creek on the south, which was crossed by the street at that point. The railway ran along the creek on the north over Guadalupe street and then crossed the creek just above the street. Guadalupe street was used up to the railroad on the north, and those who desired would deflect and go under the railroad trestle over the creek and then back into the street on the south. The street could not be used across the right of way on the south of the track, and had never been used for traffic. Appellee had built an abutment on the south that extended out into the street, but had not made it so that it could be used for traffic because appellant had not connected with it. It does not appear from the record that the city of San Marcos fixed by ordinance the grade of the street, but it connected with the grade of the railroad on the north, and built a trestle on the south which necessarily fixed the grade. The evidence showed that an abutment had been built by the railroad company, about the width of the street and to a point south of the roadbed claimed by appellee, and established by the evidence, to be the south boundary line of the right of way of appellee. The trestle built by appellant failed to reach that south boundary line, and of course failed to connect with the abutment. The boundary line of the right of way on the south was not only fixed at a point at the end of the abutment, or perhaps at a point some inches north of the south end of the abutment, but Minert, a surveyor, who was a witness for appellant, stated:

"I think there was a difference as shown on map No. 20 of 51½ or 51⁶/₁₀ feet difference between the bridge that had been constructed at that time by the city and the right of way line of the International & Great Northern; in other words, there was a space of 51⁶/₁₀ feet that the city had to bridge up to connect with the property line of the International & Great Northern Railroad Company as I established it, up to the farm lot line, and the total distance from that abutment to the north end of the trestle built by the city would be something like 97 feet. Appellant sought to make the south boundary of farm lot No. 3 the south boundary of appellee, but a surveyor who testified for appellant stated that the profile made by the railway company "would be the best evidence for the location of a boundary."

Appellee had the profile.

[1] The facts that in a condemnation suit brought by appellant against appellee the

land condemned for Guadalupe street was described so as to include land not claimed by appellee would not estop appellee from showing its boundary lines. The question of boundary was not adjudicated in the condemnation suit. The authorities cited have no applicability whatever to the facts of this case.

The evidence in the case showed that appellee had done all that was required of it by the notice to put the street in condition for the use of the traveling public; and, if the street could not be used, it was because appellant did not complete its part of the street.

[2] Article 1068, Revised Statutes, which provides for the collection of a penalty of $25 a week for a failure on a part of a railroad company "to place and keep that portion of its roadbed and right of way over or across which any public street of any incorporated town or village may run in proper condition for the use of the traveling public," when written notice for 30 days has been given "where such work or repairs are needed." The notice in this case was for work on "that portion of your right of way which has been heretofore condemned by the city of San Marcos for a crossing for Guadalupe street." There is no mention of any work or repair on the roadbed, a distinction between which and the right of way is made in the statute. A party seeking the benefit of a statute prescribing a penalty must bring himself strictly within its provisions. Scogins v. Perry, 46 Tex. 111; State v. Vinson, 5 Tex. Civ. App. 315, 23 S. W. 807; Railway v. Slator, 7 Tex. Civ. App. 344, 26 S. W. 233.

It has been held by very high authority that, in order to recover penalties, the plaintiff must prove the facts which justify a recovery beyond a reasonable doubt. Chaffee v. United States, 85 U. S. (18 Wall.) 516, 21 L. Ed. 908; Railway v. Dwyer, 84 Tex. 194, 19 S. W. 470. In this case all of the evidence was in favor of the appellee, and the court did not err in taking the case from the jury and rendering judgment for appellee. Hedgepeth v. Hamilton Co., 104 Tex. 496, 140 S. W. 1084.

If the land condemned and paid for by appellant did not all belong to appellee, the fact that it was condemned would not vest title in appellee, and there is no element of estoppel that could be invoked to prevent appellee from showing the true lines of its right of way. Appellee did not sell any land to appellant, but it took the land through the exercise of the extraordinary right of eminent domain; and, if it took land that did not belong to appellee, certainly the latter cannot be held responsible for the mistake. Appellee clearly proved the location of its southwest boundary line in Guadalupe street, whatever may have been shown in the condemnation proceeding. The question had never been adjudicated so far as appears from the record. The judgment in the condemnation suit did not contemplate the settlement of appellee's boundary lines.

The court did not err in excluding the petition and other papers in the condemnation suit. They could not have had any bearing upon the issues in this case.

The judgment is affirmed.