## SAFETY CASUALTY CO. v. GRAY.
### No. 4449.

Court of Civil Appeals of Texas. Texarkana.

Jan. 5, 1934.

Rehearing Denied Jan. 11, 1934.

J. W. Hassell, J. W. Hassell, Jr., and R. T. Bailey, all of Dallas, for appellant.

Jones & Jones and Percy Woodard, all of Marshall, for appellee.

LEVY, Justice (after stating the case as above).

There is presented by appellant the point, based on several assignments of error, that the court erred in entering judgment for the plaintiff for any sum, inasmuch as he failed

to present any competent testimony from which it might be determined what his wage or compensation rate was or should be. It is contended by appellant that the plaintiff was employed and had been working for the Magnolia Petroleum Company as a derrick man, and that at the time he actually sustained his injuries, forming the predicate of this action, the work he had been previously employed for, as a derrick man, had stopped, and he was at that time a helper at the warehouse, and had been doing this work at the time he sustained his injury for only a few days; that there is no proof of what a warehouse helper earned.

The evidence is without conflict as is here set forth. The plaintiff sustained an injury on the 7th day of August, 1931, when he was engaged in moving a heavy drill stem by the use of a bar or lever. The place of the injury was "on the Magnolia Petroleum Company's lease" located in the Willow Springs district. The company maintained an office and a warehouse with a platform at Willow Springs on its oil lease there. At the time of his injury, the plaintiff had been in the employ of the Magnolia Petroleum Company about "two-and-a-half or three months." He was employed as a derrick man on a drilling rig doing generally the work in respect thereto. He was paid the sum of $7 per day and worked seven days a week. At the time of his employment by the Magnolia Petroleum Company, he had been working about six years as a derrick man on a drilling rig, and had altogether been employed in the oil fields about twelve years. It was proven that plaintiff had been in the employ of the Service Drilling & Royalty Corporation as a derrick man on a drilling rig for "a year or more" at the time "he quit in the spring of 1931, and went to work for the Magnolia Petroleum Company." Mr. Rhea testified: "Q. I believe you stated he had worked for you all (Service Drilling and Royalty Corporation) about a year before he went to work for the Magnolia over here. A. He had worked at least that long for us, yes."

He was paid wages of $6.50 per day by the Service Drilling & Royalty Corporation.

It appears that the Magnolia Petroleum Company, on account of the lack of any existing and authorized permits to drill oil wells, and while waiting for other permits to issue, temporarily shut down drilling operations and assigned the several members of the drilling crews to work, "some of the men up here (Willow Springs district) and some to the lower part of the field." This apparently was only a temporary arrangement for, as proven, the assignment of the members of the drilling crews to the two different districts was in order "to keep them (the drilling crews) on the payroll," or at work with pay while waiting for drilling operations to start again. This assignment of the drilling crews was done "a few days only" before August 7, 1931, the day of the injury. The plaintiff, who had been at work in the drilling operations in the Kilgore district, was sent to the Willow Springs district. His testimony is:

"Q. Who did you report to when you got to Willow Springs? A. The field foreman for the Magnolia Petroleum Company.

"Q. What did he put you to doing? A. The first few days we were cementing well, and rigging up some wells, and the last day (the day of the injury) we were straightening up a platform.

"Q. Each morning you would report there to the office of the foreman and he would tell you what you were to do that day? A. Yes, sir.

"Q. On August 7, 1931, the day you were injured, who did you report to? A. The field foreman in charge of operations on the Magnolia Petroleum Company's lease.

"Q. You found him at an office there on the property at Willow Springs? A. Yes, sir.

"Q. All right, what did he direct you to do, if anything? A. He told me he had work to do around the platform of the warehouse on the Magnolia's lease.

"Q. Did the foreman take you down there? A. Yes, sir.

"Q. When you got down did the foreman give you and Mr. Turk any directions as to what you were to do that day? A. Yes, sir. He told me to clean out all the shelves in the warehouse, a storage room there, and straighten up the tools and nipples and things and to set them in place and straighten up the platform where stuff had been stored on the outside, where it would leave room for other stuff.

"Q. Did he tell you what to do, if you got through with that before he got back? A. Yes, sir. He said, 'If you get through with it before I get back, anything you see to be done, picking up sticks, cleaning up, go ahead and do it.'

"Q. Did he leave anybody in charge there at the warehouse? A. Yes, sir. He told me he was leaving me in charge, and told me to go ahead and do anything I seen necessary to be done on the lease that day.

"Q. How much were you being paid at·the time you got hurt? A. Seven Dollars (per day)."

It is believed the evidence warrants the conclusion of fact that the plaintiff, when injured, was under the instructions of his field foreman assisting in the cleaning up of the platform of the warehouse, which was only a temporary affair and was not to continue for any considerable time, that the plaintiff was originally employed by his employer as a derrick man and was paid the wages of $7 per day, and that his service for wages of $7 per day as a derrick man was continuous, and had not stopped at the date of his injury. It is concluded, even though the plaintiff was under the instructions of his field foreman temporarily assisting in the cleaning up of a platform when injured, yet he was in continuous service of his employment as a derrick man, and was being paid wages as a derrick man of $7 per day. He had not ceased to have the "employment" of a derrick man within the meaning of the word "employment" as used in the Workmen's Compensation Act (article 8306 et seq.); Fidelity Union Casualty Co. v. Carey (Tex. Com. App.) 55 S. W.(2d) 795.

The evidence appears undisputed that the plaintiff had worked in the same employment of derrick man for more than a year prior to his injuries and substantially the whole of a year—for two and a half or three months with the Magnolia Petroleum Company and for over a year with the Service Drilling and Royalty Corporation. The judgment in amount as entered is not erroneous.

The appellant complains further of the argument made to the jury and of the admission of certain evidence. We have considered the assignments, and are of the opinion that they should be overruled as not warranting reversal of the judgment.

The judgment is affirmed.