## TEXAS EMPLOYERS' INS. ASS'N v. PEARSON.

### No. 4125.

Court of Civil Appeals of Texas. Amarillo.
Jan. 8, 1934.

Rehearing Denied Jan. 22, 1934.

Underwood, Johnson, Dooley & Huff, of Amarillo, for appellant.

L. B. Godwin and Wm. F. Nix, both of Amarillo, for appellee.

HALL, Chief Justice.

This is a workmen's compensation case. Pearson instituted his action against the appellant on account of injuries which he alleges he received on October 26, 1931, while in the employ of the Amarillo Cotton Oil Company, assisting in the construction of a wooden form for use in completing what is called a "dump pit" for said company.

The specific allegation relating to the injury is that while constructing the wooden form he ran a splinter into the palm of his hand; that the wound was later infected, which involved his left hand and fingers; that the "result of which alleged accident was that septicemia or other similar infec-

tion promptly ensued, involving his left hand and digits, became inflamed, irritated and swollen throughout the entire hand and fingers and resulted in ankylosis, suffering and impairment of the entire joints of the hand and fingers, derangement of the circulation, feeling, temperature, use and function of the hand, the tissues of which are atrophied, impaired in elasticity, partially paralyzed, and as a further result of which plaintiff sustained the total loss of the use of his left hand and fingers, at or about the occurrence of the alleged accident, which total loss of use he claims is permanent, but he alleges in the alternative that if he is mistaken in the allegation that" the loss of use is total, and if total that it was permanent, that he has suffered partial loss and temporary injury, if not permanent.

The case was submitted to a jury upon special issues, which were answered in favor of appellee and resulted in a judgment for him in the sum of $526. The substance of the verdict is that he suffered partial loss of the use of the hand and sustained permanent injury thereto.

By several propositions, the appellant insists that because the evidence shows that the index, middle, and ring fingers of appellee's left hand were stiff and that he could not flex his hand to the extent that the ends of his fingers would reach the palm, and because he testified that he could not hold a small object, such as a nail, between his thumb and fingers and that the grip of his hand was thereby weakened, that the court in submitting the case upon the theory of injury to his hand submitted it upon an erroneous theory. That the injuries appeared to be specific, in that his fingers were disabled and that if plaintiff was entitled to recover at all, it was for the loss of the use of such fingers instead of the loss of the use of his hand.

The plaintiff testified, in substance, that the movement of his thumb was not impaired; that after the splinter was removed from between his fingers, he continued to work for a short while but his hand then became badly swollen; that one of his fingers was lanced by the attending physician, and while he could not close his fingers completely, when he attempted to do so he suffered pain in the back of his hand which he described as kind of a sprained feeling.

Dr. Aronson, who examined the appellee's hand, testified that there was an involvement of the hand, the wrist and also the fingers, which seemed to be tied down about 50 per cent.; that the inflammation which caused the tendons of the fingers to be tied down must have extended to the covering of the tendons, and in all such inflammations adhesions always form in the covering of the tendons which go to the fingers and in that way interfere with the motion of the

hand and fingers, and that on account of the conditions at the time he examined appellee's hand, he was suffering about 40 per cent. disability in the use thereof due to the fact that the grip of his hand was weakened considerably compared with the grip of his right hand and also due to the further fact that he could not flex his middle, index, and ring fingers to the fullest extent; his middle and ring fingers suffered more lost motion than his index finger; that he would suffer inconvenience on account of the fact that he was engaged exclusively in common labor and that his left hand to a great extent would be useless in any manual labor.

The court's special issue No. 1 (a) is as follows: "Do you find and believe from the preponderance of the evidence that the plaintiff T. N. Pearson sustained an injury to his left hand on the 26th day of October, 1931?" To which issue the defendant objected, as follows: "Defendant excepts to the Court's Special Issue No. 1 (a) because same submits the matter of alleged injury from the standpoint of the plaintiff's hand as a whole and the record in this case is wholly insufficient to show any injury to the plaintiff's hand as a whole in the sense of the Compensation Law."

The court's special issue No. 2 (a) is as follows: "Do you find and believe from the preponderance of the evidence that the plaintiff has suffered the partial loss of the use of his left hand as the result of the injury if any sustained by him on October 26, 1931?"

This issue was also objected to because it was given upon the theory that the injury was to the whole hand instead of to the fingers.

■ Further objections were made to other issues upon the same ground, and the court gave this explanation: "In connection with this issue 2 (a) and (b) you are instructed that the term 'partial loss of the use of his left hand' means the extent, if any, that the injury, if any, to said hand in fact destroys or impairs the ability of the hand to be as efficient or competent for use after the injury, if any, as it was before."

The defendant objected to the explanation upon the ground that it purports to deal with the loss of the use of the hand regarded as a whole in the sense of the Compensation Law and because there is no evidence in the record to justify any finding of liability on that theory.

We think this contention is without merit. Appellant seems to think that appellee could not recover for the injury to his hand and his fingers at the same time. We do not so understand the law. While the appellee set out in his petition the fact that his hand, wrist, and fingers were injured, he did not pray for additional compensation for the loss

of the use of each of his disabled fingers, which he had the right to do. Security Union Ins. Co. v. McClurkin (Tex. Civ. App.) 35 S.W.(2d) 240; Texas Employers' Ins. Ass'n v. Moreno (Tex. Com. App.) 277 S. W. 84.

R. S. art. 8306, § 12, provides, in part: "Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the. injury which produces the longest period of incapacity; *but this section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one member, for which member compensation is provided in this schedule, compensation for specific injuries under this law shall be cumulative as to time and not concurrent.*" And it further provides that in "cases of permanent, partial incapacity, it shall be considered that the permanent loss of the use of a member shall be equivalent to and draw the same compensation as the loss of that member." Texas Employers' Ins. Ass'n v. Maledon (Tex. Com. App.) 27 S.W.(2d) 151.

■ Under the rule quoted in Texas Employers' Ins. Ass'n v. Neatherlin (Tex. Com. App.) 48 S.W.(2d) 967, 969, he could waive his right to recover for specific injuries where, as a result of the accident, he suffered any other injuries in addition thereto. The rule is as follows: "We do not mean to hold that an employee who has received an injury to a specific member of the body is confined to a recovery of the compensation specially provided for such injury if he is able to allege and prove other injuries or if it be fairly shown that the injury to the specific member has involved other portions of his body or affected his general health. Under such allegations and proof he may be entitled to have his injury compensated under the more liberal provisions of the act." Citing Lumbermen's Reciprocal Association v. Pollard (Tex. Com. App.) 10 S.W.(2d) 982; Texas Employers' Insurance Ass'n v. Moreno (Tex. Com. App.) 277 S. .W. 84; Lumbermen's Reciprocal Ass'n v. Anders (Tex. Civ. App.) 292 S. W. 265; Rockwell v. Lewis, 168 App. Div. 674, 154 N. Y. S. 893.

■ The defendant requested the court by its fifth special issue to submit to the jury the following questions:

"(a) Does the plaintiff have any disability in his left hand?

"If you have answered the foregoing question in the negative, then you need not answer the next question, otherwise you will answer the following:

"(b) Does all such disability result from impaired use, of any one or some one or more of the plaintiff's fingers on his left hand?"

By its pleadings the defendant charged that the plaintiff had no substantial impairment of the use of his left hand, or at least that such disability consisted merely of impaired use of some·one· or more of plaintiff's fingers on his left hand.

Dr. B. M. Puckett, whose qualifications as an expert were admitted, testified that he had examined the plaintiff's hand, who made no complaint to him except that he could not close his hand completely and that an effort to do so resulted in pain in his fingers. He stated that when he used his hand to work plaintiff's fingers, they closed clear down to the palm of his hand like any other person's hand when it is gripped. He further said, however, that while he was manipulating Pearson's hand in endeavoring to close it, Pearson offered resistance. He stated as his opinion that he found nothing which would render Pearson any less able to go along and work than before the injury. That in his opinion Pearson did not have ankylosis and no fixed joints in his hand. That Pearson allowed him to close his hand, although there was resistance. That while there might have previously been infection, that was not the cause of the resistance. That there was no swelling, that the joints of his fingers' moved perfectly, and that Pearson straightened his fingers out himself. That he found no stiffness in his hands.

This was some testimony tending to sustain defendant's allegation that if plaintiff's hand was affected in any way, his fingers only were involved, and also bore upon the further issue that even the fingers were not involved. Texas Employers' Insurance Association v. Galloway (Tex. Civ. App.) 40 S.W.(2d) 973. Since the requested issue was raised both by the pleadings and the evidence, the error of the court in refusing the requested charge will require a reversal.

■ The court submitted this issue: "Do you find and believe from the preponderance of the evidence that there were employees of the same class as the plaintiff working in or near Amarillo, Texas, substantially the whole of the year immediately preceding October 26, 1931, in the same or in a similar employment as the plaintiff was engaged in at the time of his injury, if any?" The appellant objected to this issue upon the ground that it was compound and multifarious.

We think the court properly submitted the issue in this form, if indeed it should have been submitted at all—which we doubt. It is not a multifarious issue, although it groups three several facts; each fact being necessary to constitute a complete issue.

In Speer's Law of Special Issues, it is said: "Grouping facts has already been noticed in another connection but it is necessary again to notice it in the following particular. It is not always the case that the submissible issue consists of a single, simple fact. It

may consist of a primary fact as limited or qualified by some other fact consideration, yet on the whole be a single issue. In such case the one real issue can often be best submitted with the limiting or qualifying facts stated in connection with the one real issue to be submitted." Section 94.

Again, in section 187, the author says: "It does not follow, however, that there can not be a grouping of facts in a single interrogatory. On the contrary it frequently happens that the ultimate fact issue being submitted is made up of more than a single fact element—sometimes of a group of facts or fact elements. Without the concurrence of all of such facts, the controlling fact issue would be incomplete and a finding thereon meaningless in law, so that a proper grouping of facts as herein contradistinguished from issues is not only allowable but often times is permissible and even indispensable."

If the court had submitted as the first issue whether there were employees of the same class as the plaintiff working in or near Amarillo, Tex., it would have called for a finding which would have been immaterial unless it were further found that they were so employed the whole of the year immediately preceding October 26, 1931, and also were employed in the same or similar work as the plaintiff. The issue as submitted is practically in the language of the statute and requires a grouping of the facts included in it in order to form a basis for determining the amount of the plaintiff's compensation. We overrule this proposition.

█ We think it is necessary to consider only one other contention, and that is with reference to the finding of the jury upon the issue of the plaintiff's average weekly or daily wage.

R. S. art. 8309 provides three methods of determining the average weekly wage of the claimant. If he has worked substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage which he has earned while so working. The evidence shows that this rule cannot be applied in determining the plaintiff's average weekly wage. The second method to be employed is where the complainant has not worked for the whole of the year for his employer, then his average annual wages shall be determined by ascertaining three hundred times the average daily wage of an employee in the same class, working substantially the whole of the year preceding the day of the injury or engaged in a similar employment in the same or neighboring place for such time. The third method is applicable where the employee has not been engaged in the class of work for such length of time as is specified under the first rule and where no other employee has been so engaged as is provided under the second rule. In that event the compensation shall be computed in any manner which may seem just and fair to both parties.

The court submitted this special issue: "Do you find and believe from the preponderance of the evidence that there were employees of the same class as the plaintiff working in and near Amarillo, Texas, substantially the whole of the year immediately preceding October 26, 1931, in the same or in a similar employment as the plaintiff was engaged in at the time of his injury, if any?"

This was answered in the affirmative. In response to the next issue the jury then found that the average daily wages being earned by the plaintiff during the said year was $2.75. The court then submitted an issue under the third ground, instructing the jury that if the first issue was answered in the negative, then to find for the plaintiff what might seem to the jury to be just and fair to both parties. This issue was not answered.

The finding of the jury is attacked upon the ground that it is arbitrary and that there is no evidence whatever to support the finding that $2.75 a day was his average daily wage. This contention must be sustained.

█ It is conceded that the plaintiff is not a skilled workman, and he testified himself that he was a common laborer. One witness testified that during the time preceding the injuries, common laborers were receiving $4 per day. Another testified that they were being paid $2.50 per day, and the uncontradicted testimony is that common laborers in and around the cotton-oil mill where plaintiff was employed were paid the uniform price of $1.50. It is true that the jury are the exclusive judges of the weight of the evidence and of the credibility of the witnesses, and they could have believed either of the witnesses who testified upon this issue and rejected the testimony of the others, but the amount of the verdict indicates that they did not believe either of the three and that they made their own estimate of what the average daily wage of common laborers was and fixed a price that is not supported by any testimony whatever.

█ As said by Speer in his Law of Special Issues: "The recovery in a case itself frequently presents a findable fact. This is especially true where the recovery is not a fixed and definite one, but is one dependent upon the evidence—or what is the same thing, upon the judgment of the jury—as to the amount." Section 101.

█ Where there is an issue of damages to be recovered for personal injuries or where the amount depends upon the value of the property destroyed or converted and there is a conflict in the testimony, it is peculiarly within the province of the jury to find the amount and reconcile the conflict, if possible, rendering a verdict for whatever damages

634

they think plaintiff has sustained; but that rule has no application to cases of this character. The statute fixes the amount of compensation according to the average annual wage of the plaintiff if he has worked a year, and if he has not work as much as three hundred days, then his annual average wages shall be three hundred times the average daily wage earned by another employee of his class working substantially the whole of the immediate preceding year in the same or similar employment in the same or neighboring place. When from the evidence it can be ascertained what his average daily wage would have been, the jury is bound by the facts proven. In such cases they are not at liberty to arbitrarily fix the amount of compensation at a figure which is not supported by any testimony in the case. It has been frequently held that juries cannot arbitrarily set amounts in such cases which are not sustained by any evidence. Jeanes v. Blount (Tex. Civ. App.) 206. S. W. 209; Clark v. Spurdis (Tex. Civ. App.) 258 S. W. 881; Coppedge v. Kreuz (Tex. Civ. App.) 2 S.W.(2d) 362; Shropshire v. Doxey, 25 Tex. 128; Smith v. Hoffman (Tex. Civ. App.) 201 S. W. 204; Akin v. Matthews (Mo. App.) 50 S.W.(2d) 689.

The testimony shows that during the period in which compensation is claimed, some day laborers working for the same company were getting $1.50 per day; that other common laborers, whether of the same class or not does not appear, were being paid $2.50 per day; and still others whom the witnesses say were common laborers were getting $4 per day working for Lambie. We do not know whether these were all employees of the same class with appellee, nor whether they worked substantially the whole of the year immediately preceding the day of his injuries in the same or similar employment. This being the state of the record, we are of the opinion that the appellee's right to compensation rests upon the third subdivision of section 1 of R. S. art. 8309, instead of the second subdivision, under which the compensation has been determined. The general rule is that where the parties have contracted with reference to a certain standard by which compensation or damages shall be measured, then the jury is not at liberty to estimate the recovery upon a quantum meruit or average basis, but plaintiff must recover, if at all, according to the standard agreed upon. American Refining Co. v. Staley (Tex. Civ. App.) 274 S. W. 272; 64 C. J. 1083; Dyer v. Barnes, 128 Me. 131, 145 A. 741.

In Kocher v. Mayberry, 15 Tex. Civ. App. 342, 39 S. W. 604, it appears that the parties had entered into a contract fixing the price of labor and materials in the erection of certain improvements upon property belonging to the appellant. There was a conflict in the testimony as to the compensation to be paid for the improvements. Plaintiff testified that by the second contract he was to receive $2,850. According to defendant's testimony, the price agreed upon was $2,000. By its charge the court instructed the jury that if they found that defendant agreed to pay the reasonable value of the improvements, they should allow the reasonable value of the work and materials expended. Upon appeal Judge Williams said that this was error, that all the evidence tended to show a contract fixing the price and it furnished the measure of plaintiff's compensation and he could not under the evidence recover upon a quantum meruit, that there was no evidence of such an agreement as that mentioned in the charge, and that while evidence as to the value of the work and materials was admissible as a circumstance for the jury to consider in resolving the conflict of evidence as to the price fixed by the contract plaintiff should have been restricted to that price.

In the instant case the statute, which is a part of the contract of insurance under which appellee labored, fixes three different standards for measuring his compensation under the varying circumstances. If he has worked a year, according to his contract, his compensation must be measured by the first provision of the above article; if he has not worked a year and another employee in his class in the same or similar labor, in the same or neighboring place, has worked for substantially a year, then the average of such employee's compensation is the standard. Where neither condition exists, then the claimant is entitled to recover under the third subdivision of the statute, and upon the face of the record before us, the jury should have been required to answer the interrogatory propounded by the court referable to this provision of the statute. It was not shown that any laborer of his class earned $2.75 and, as said in 64 C. J., supra, a jury will not be permitted to depart from a fixed standard of sale by which the damages may be calculated.

After a careful review of the statement of facts and the entire record, we are of the opinion that the case has been submitted upon an erroneous theory and that plaintiff, under the record before us, should have recovered, if at all, under the third subdivision of section 1 of article 8309.

The appellee moves this court to affirm the judgment with 10 per cent. damages for delay. Obviously that motion must be overruled.

For the reasons stated, the judgment is reversed, and the cause remanded.

MARTIN, Justice (dissenting).

The writer respectfully dissents from the view that the evidence raised an issue as to whether or not all disability to the appel-

lee's left hand resulted from the impaired use of some one or more of the fingers of said member. That is, that there existed only an injury to some one or more of the fingers alone without a hand injury. We construe the evidence of Dr. Puckett on the whole as denying the existence of any injury, either to the hand or fingers. As I see it, the nearest approach he made to testifying to an injury to the fingers was his statement that appellee complained of a pain in his fingers whenever he made an effort to close his hand. It occurs to the writer that pain in the fingers during such movement would almost of necessity accompany a hand injury. Otherwise expressed, the fingers are the highly flexible part of the hand, and a pain during their movement does not necessarily prove a finger injury separate and apart from one to the hand, but would be the likely, if not the necessary, result of a hand injury of the character here claimed. The purport of this testimony seems to be that appellee's claim of injury was a simulated one —"the joints of his fingers moved perfectly." The issue squarely made, in my opinion, was the existence of a hand injury, and the fact that appellee' suffered pain in his fingers does not raise an issue of an injury to the fingers wholly distinct from and unrelated to any hand injury, so that it could be said that he suffered a specific injury to one or more of these members without injury to his hand.

The second point upon which the reversal is based is that the finding of $2.75 as the average daily wage earned by appellee was arbitrary and without evidence to support it and that subdivision 3, § 1, art. 8309, R. S., applies to the present facts.

The testimony of witness Morgan for the appellee is that he had lived in Amarillo for six years, was a common laborer, and acquainted with the wages paid such class, and that for a year preceding the injury such wages were 50 cents per hour upon an eight-hour per day basis. The witness Smith for appellee testified that such wages were $1.50 per day for said period. It is, we think, a matter of general information that the wage scale of the common laborer is not uniform either in the same or different communities. Will such lack of uniformity destroy their right to compensation under said subdivision 2? Or stated otherwise, is a jury compelled to accept the testimony of one witness as to such wage scale, and reject all testimony differing therefrom? Does the statute mean that there must be absolute uniformity in a wage scale before subdivision 2 applies? Could not the jury believe in this case that both Morgan and Smith testified truthfully and, so believing, find the average wages of common labor in Amarillo to be the sum of $4 plus $1.50 divided by two, which makes the precise verdict returned? In the proper answer to these questions will be found the solution to a question perplexing and absolutely original in its facts so far as the writer has been able to ascertain. Does subdivision 3 apply here? If not, then we apprehend no contention will be made that the trial court erred in submitting appellee's case under subdivision 2. Subdivisions 2 and 3 are in the following language:

"2. If the injured employee shall not have worked in such employment during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed.

"3. When by reason of the shortness of the time of the employment of the employee, or other employee engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties."

Properly interpreted in this case, subdivision 3 applies if the time of employment of the "employee or other employee engaged in the same class of work" is less than "substantially the whole of the year." This is the precise condition unmistakably written into the statute, but if "other good and sufficient reasons" exist the case may fall under subdivision 3. Here we have a record, as we interpret it, which reflects conclusively that common laborers as a class work the entire year, though the appellee did not, and his case is therefore ruled by the average daily wages received by employees of the same class working substantially the whole year. The writer is inclined to the view that this statute must be construed to mean that where, as here, common laborers work the whole year at wages running from $1.50 per day to $4 per day, the jury are at liberty to average their wages as was done by their verdict, and that said subdivision 3 has no application under such a state of facts. The question is not free from difficulty, but we are influenced in our view by the fact that the Legislature, knowing the varying character of the wages of common laborers, has specifically conditioned the application of subdivision 3 to cases where employment was for less than "substantially the whole of year immediately preceding the injury." If the nonexistence of this condition of employment transfers the case to subdivision 3, would not its existence prevent such transfer? We think so where, as here, it is possible to average the wages of common

labor. Moreover, this construction seems to the writer to be in consonance with the beneficent provisions of this wholesome statute. As he views it, the effect of the construction placed by the majority tends to make the law unworkable as to common laborers. We apprehend in every future case involving common labor, evidence can be produced showing a lack of uniformity in wage scale.

The writer regards the present case on both points discussed as a precedent of unusual importance, which furnishes his excuse for writing at more length than might seem necessary.