**TEXAS INDEMNITY INS. CO. v. SMITH.**
**No. 4238.**

Court of Civil Appeals of Texas. Amarillo.
May 28, 1934.

579

Underwood, Johnson, Dooley & Huff, of Amarillo, for appellant.

L. B. Godwin and Kimbrough & Boyce, all of Amarillo, for appellee.

HALL, Chief Justice.

The appellee, Smith, recovered a judgment against the appellant insurance company in the principal sum of $5,778.12, with interest and costs of suit.

His action was for compensation under the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306, et seq.), claiming damages on account of personal injuries which he alleges he sustained on April 21, 1932, when he was helping load lumber on a truck and some of it blew off or fell off of the truck and struck him, at which time he was an employee of the Skelly Oil Company, a subscriber under the compensation statute, holding a policy of insurance issued by the appellant.

The case was submitted to a jury upon special issues.

The first contention to be considered is that because the proof shows plaintiff had worked substantially the whole "and even more of the year" immediately preceding his injury, in employment similar to the work he was doing at the time he was hurt, that his own earnings were a sufficient basis for determining his average weekly wage under the compensation law, and since he failed to show what his earnings were during such period, the evidence is insufficient to support a recovery; and further that plaintiff failed to show that the rule for determining his average weekly wage on the basis of his own earnings for the year preceding his injury was inapplicable to his case, and because of this failure he was not entitled to resort to evidence showing the wages earned by other employees as a basis for computing his compensation under the second subdivision of section 1 of the statute (article 8309).

We think this contention is sound. It is settled law that plaintiff must recover compensation on the basis of his own earnings for the year preceding his injury while working in the employment in which he was engaged at the time of the injury. Moreover, the burden is upon him to plead and prove that he was not doing the same kind of work during substantially the whole of the year immediately preceding his injuries, as the kind of work in which he was engaged when injured, before he is permitted to prove the average weekly wages of another laborer similarly employed as a basis for computing his compensation. Texas Employers' Ins. Ass'n v. Comer (Tex. Civ. App.) 42 S.W.(2d) 832; American Employers' Ins. Co. v. Singleton (Tex. Com. App.) 24 S.W.(2d) 26.

The court, by the sixteenth special issue, asked the jury:

"Do you find, from the preponderance of the evidence, that any employee of the same class of the plaintiff worked substantially the whole of the year from April 21, 1931, to April 21, 1932, in the same employment in which plaintiff was working on April 21, 1932, or in a similar employment to the employment in which plaintiff was working at said time, in the same place in which plaintiff was working on April 21, 1932, or in a neighboring place to the place in which plaintiff was working at said time?"

The jury answered this in the affirmative, so it appears that the plaintiff has recovered under the second subdivision of section 1 of article 8309, when according to appellant's contention he had not negatived his right to recover under subdivision 1. The jury found that he had worked for the Skelly Oil Company as a roustabout for 162 days prior to the date he was injured. He testified that he commenced to work for the Skelly Oil Company November 10, 1931, and was injured April 21, 1932, which would be 162 days; that prior to that time he had worked

for the Prairie Oil Company and for the Panhandle Eastern Pipe Line Company. According to his statement, he did roustabout and pumping work for the Skelly Company; that he commenced working for the Panhandle Eastern Company in January, 1931; that he was laid off for three weeks and commenced working for the Skelly Company; that while working for the Panhandle Eastern Company, it was mostly with a pick and shovel; that it was harder work than roustabout work for the Skelly Company; that in roustabouting "you have more lifting to do"; that there is not much difference and "to tell the truth about it I would not turn on my heels for the difference." He further testified that while working as a roustabout for the Skelly Company, he looked after a small pump as part of his roustabout duties when the regular pumper was not present.

The witness, Geiger, an oil field worker, employed by the Skelly Oil Company, testified, when asked what kind of work plaintiff did for the Skelly Oil Company, during the several months of his employment: "Well, it was general roustabout work. It is hard to go into details of everything that was done. There was pipe lining, taking up lines, cleaning threads on pipe which had been pulled out of wells and rolling them back and such as that and, of course, there were a few ditches dug and filled in."

Smith testified that he had been an oil field worker for a period of years and had worked for a number of companies, including the Panhandle Eastern Pipe Line Company, and when asked if his work was pipe line lining, said: "Yes, sir, it was on a pipe line—on maintenance lines," so, according to the testimony of Smith and Geiger, he did pipe line lining for both companies. He seems to have been classified as a roustabout—that is, a man employed to do casual work and odd jobs under the direction of his superiors, and the inference from the description of his duties is that he was a common laborer when working for either company. He did not claim to be a skilled laborer and none of the duties imposed upon him, as shown by the record, required the services of a skilled laborer. It is true, in the absence of the regular pumper, while working for the Skelly Company as roustabout, he was sometimes called upon to operate a small engine pumping water into a boiler. The very nature of his employment required a diversity of duties and the record does not show that while temporarily operating the water pump during the absence of the regular pumper, he lost his identity as a roustabout. Safety Casualty

Co. v. Gray (Tex. Civ. App.) 67 S.W.(2d) 1057; Fidelity Union Casualty Co. v. Carey (Tex. Com. App.) 55 S.W.(2d) 795; Texas Employers' Ins. Ass'n v. Price (Tex. Civ. App.) 300 S.W. 667.

We think this testimony tends to show that the duties performed by him during the entire year next preceding his injuries were of the same general class. At least they do not show that his compensation could not be computed under subdivision 1, § 1, art. 8309.

In our opinion the court erred in submitting the case under the second subdivision of section 1 of the statute (article 8309), in this, said subdivision provides:

"If the injured employee shall not have worked in such employment during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediate'y preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed."

By the sixteenth special issue, supra, the court fixes as the basis for calculating compensation upon the earnings of any employee of the same class with plaintiff who had worked substantially for the whole of a year in the same employment in which plaintiff was working at the time of his injury or in a similar employment in a neighboring place.

In view of the fact that four different roustabouts were shown by the testimony to have received, two of them $5 per day, one $4.50, and one $3 per day, precluded the court from submitting the issue under this subdivision. In order to determine the measure, the jury either had to believe one of the witnesses and disbelieve the other three, or add the four amounts together as they did and divide it by the number of witnesses and find the average as a basis for computing plaintiff's compensation. The statute does not contemplate any such proceeding and to permit verdicts to be arrived at in that way will open a door to fraud and injustice. The claimant, of course, will procure as many witnesses as possible who are securing the greatest wages being paid. On the other hand, the insurer will be interested in securing as many witnesses of the same class who were receiving smaller wages. The party who secures the greatest number of witnesses will receive the most favorable verdict. Such a method is permissible in a

primary election, but lawsuits should not be decided in that way. The case could only properly be submitted under the second subdivision where more than one witness testifies upon the issue of the wages received by witnesses of that class when they all fix the daily or weekly wage at the same amount. The language of the statute is plain in saying that the claimant's average annual wages shall consist of three hundred times the average daily wage or salary which an employee of the same class, etc., and we think the Legislature intentionally made the wages of one employee of the same class as the standard in order to avoid the confusion incident to just such a condition as confronts us in this case. Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084, 1087, is the leading case in this state upon a great many issues which arise in the trial of compensation cases. Chief Justice Cureton said:

"The general rule is that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable."

Where the statute plainly says, as in subdivision 2, that the average daily wage of one employee of the same class is to be the basis, the court should not submit to the jury an issue where several witnesses of the same class are shown to be drawing different salaries or wages. In the Mingus Case Judge Cureton further says:

"The Workmen's Compensation Act having created the rights to be enforced and provided the remedy therefor, each step in the progress of the maturity of a claim from the time of the injury to its final adjudication is a mandatory requirement, necessary to the exercise of jurisdiction by the first and succeeding statutory agencies."

As we construe the effect of Judge Cureton's language, the proper basis for computing the claimant's compensation under subdivision 1 is three hundred times his average daily wage during the days when he was employed, if his employment continued substantially the whole of the year immediately preceding the injury. As we have heretofore stated, the plaintiff failed to show that he was or was not entitled to recover under this subdivision. As to the second subdivision, the testimony of the four witnesses, two of them placing a roustabout's compensation at $5 per day and the other two at $4.50 and $3

respectively, required the jury to fix an arbitrary amount, which this court held in the Pearson Case (Texas Employers' Ins. Ass'n v. Pearson), 67 S.W.(2d) 630, was not permissible. No witness testified in this case that the average daily wage of any roustabout in that vicinity was $4.37. If upon another trial the evidence is the same, the court should submit the issue of compensation under subdivision 3.

This court said in the Pearson Case, 67 S. W.(2d) 630, 634:

"If he has worked a year, according to his contract, his compensation must be measured by the first provision of the above article; if he has not worked a year and another employee in his class in the same or similar labor, in the same or neighboring place, has worked for substantially a year, then the average of such employee's compensation is the standard. Where neither condition exists, then the claimant is entitled to recover under the third subdivision of the statute, and upon the face of the record before us, the jury should have been required to answer the interrogatory propounded by the court referable to this provision of the statute. It was not shown that any laborer of his class earned $2.75 and, as said in 64 C. J., supra, a jury will not be permitted to depart from a fixed standard of sale by which the damages may be calculated."

■■ Under several propositions the appellant contends that the court erred in failing to define the word "employment" as used in the fourteenth special issue, and the word "class" as used in the fifteenth.

Cases might arise in which these two words would be held to be legal terms, but it is only necessary to explain terms which have a meaning different in judicial proceedings and in law than is usually given them in their ordinary sense. T. & P. Ry. Co. v. Short (Tex. Civ. App.) 62 S.W.(2d) 995. The court should define or explain only legal and technical terms used in his charge. The meaning of ordinary words used in their usual, popular, or conventional sense need not be explained. The words "employment" and "class," as used by the court in the two issues, were used under circumstances and conditions which could not have been misunderstood by the jury. An intelligent juror understands what ordinary words, used in their usual sense, mean, and an attempt to define them tends to mystify and confuse rather than enlighten the jury. Stanton v. Boyd (Tex. Civ. App.) 299 S. W. 321.

There are numerous other propositions urged which, in view of another trial, it is not necessary to discuss.

For the reasons stated, the judgment is reversed and the cause remanded.