## LEHERS et ux. v. FEDERAL UNDERWRITERS' EXCHANGE.

### No. 2698.

Court of Civil Appeals of Texas. Beaumont. March 8, 1935.

Rehearing Denied March 13, 1935.

Wm. O. Bowers, Jr., of Beaumont, for appellants.

John F. Battaile, of Houston, for appellee.

WALKER, Chief Justice.

This is a compensation case, with Double Dip Ice Cream Company the employer, appellee Federal Underwriters' Exchange the compensation insurance carrier, and Harold Lehers, deceased, the employee. Harold was killed on September 17, 1933, in a collision between a car he was driving and one driven by Joe Anselmo. Harold was a minor and left surviving his father and mother, appellants, Mr. and Mrs. August Lehers, who duly filed their claim with the Industrial Accident Board for compensation, which was refused. This suit was instituted by them as an appeal from that award. On conclusion of the evidence the court withdrew the case from the jury and entered judgment for appellee. All issues in the lower court were conceded in favor of the plaintiffs except "whether or not Harold Lehers was engaged in the course of his employment at the time of the fatal accident." The appeal was duly prosecuted by the plaintiffs, and the only question here is the one at issue in the lower court.

We take the following statement from appellants' brief:

"The Double Dip Ice Cream Company had two sales stations in Beaumont, one on Calder Avenue and one on College Street, under the general management of Mr. F. R. Ball at the Calder Avenue station. Harold Lehers was employed to dip ice cream and to perform many other duties, principally at the Calder Avenue station. For some fourteen days prior to his death, the said Harold Lehers, under the direction of the manager, Mr. Ball, had been going from his home on Park Street to the College Street station, there obtaining the daily report and money of that station, and carrying the same to Mr. Ball at the Calder Avenue station, and there worked from 11 o'clock A. M. until 1 o'clock P. M., and again from 6 o'clock P. M. until closing time. On the morning of September 27, 1933, the said Harold Lehers left home at his customary time about 10:30 o'clock driving the family automobile, which it was his custom to

use, in the direction of the College Street station, and shortly afterward was killed in a collision with another automobile at the corner of Victoria and Royal streets, eleven blocks from his home and seven blocks from the College Street station and about twenty-five blocks from the Calder Avenue station, according to the map of the City of Beaumont in evidence. * * *

"Mr. F. R. Ball testified that he was the Beaumont manager of the Double Dip Ice Cream Company, which operated two sales stations in Beaumont, No. 1 on Calder Avenue and No. 2 on College Street, and Harold Lehers was at all times under his direct control and authority as an employee under an oral contract of employment; that Harold's main duty was dipping ice cream but he had many and various duties. which were performed at the Calder Avenue store; that on two occasions Harold had worked at the College Street station when an employee did not appear for work there, and on two occasions Harold had carried ice cream in his (Harold's) car from Calder Avenue store to the College Street store as he went home to dinner; that at his request Harold had for fourteen days prior to the fatal accident come by the College Street station each morning and brought that station's money to him at the Calder Avenue station, and reported for work at 11 o'clock, but that was a personal favor and not a part of Harold's work although it was the company's money, and no compensation was paid in addition to that paid for work at the Calder Avenue station from 11 o'clock A. M. to 1 o'clock P. M. and from 6 o'clock P. M. until closing time; that it was more convenient for him to have the money at 11 o'clock, as he usually went to the bank about 11:15 or 11:30 in the morning; that prior to Harold going by College Street station for the reports and money, another employee named McLean, who lives within a block and a half of the College Street station and also worked at the Calder Avenue station, brought the reports and money to him, but that when he changed the boys' working hours, McLean's to one o'clock, he had Harold bring them to him at 11 o'clock; that he gave Harold these instructions in a rear room at the Calder Avenue store, yet he called him at home one time and told him to come by and get the money, knowing that Harold had the use of an automobile in going to and from work, and that by reason of the locations of his home and the two stations it would not be inconvenient to come by the College Street station on the way to the Calder Avenue station.

"A map of the city of Beaumont is in the record, showing the locations of Harold's home and the two stations, and the direct route being traveled by Harold when killed. (Harold was killed while on his way from his home to the College Street station for the purpose of picking up the money and the reports.)

"Appellant August Lehers testified that up until September 7, 1933, he usually drove Harold in the car from home by College Street station, where Harold always got a package, and indicated the usual routes traveled on the map of the city; that after September 7, 1933, Harold used the family car alone, and on September 27th he saw Harold leave home in the car driving toward Lyle Avenue a little after half past ten o'clock.

"Appellant Mrs. Elizabeth Lehers testified. that on the day Harold was killed he brushed his teeth, combed his hair, and got ready for work at 10:25, and said to her as he went through the kitchen, 'I am going to work, Mother,' and went to the garage and got in the car and left; that it was his custom to start to work between 10:30 and 10:35 every morning, except Monday, when he did not work.

"* * * Harold was a general utility and handy man, dipping ice cream principally, but having many other and various duties under the direct control and authority at all times of Mr. F. R. Ball, manager of the Double Dip Ice Cream Company. He mopped floors; he picked up papers and cups about the store and adjoining blocks; he worked on two occasions at another station of his employer when an employee failed to show up for work; he carried ice cream in his own car from one of his employer's places of business to the other; he went after the daily reports and the money of one station and carried them to the other. All he did was under the direction of Mr. Ball, and as an employee he had no right to question such directions."

This statement raised the issue in favor of appellants that at the time Harold was killed he was "engaged in or about the furtherance of the affairs or business of his employer," as that term is used in our Workmen's Compensation Act, article 8309, § 1, defining "injury sustained in the course of employment," of R. S. 1925. The following fact issues were raised for the jury: At the time he was killed Harold was on his way to the Calder avenue station to enter upon the dis-

charge of the regular duties of his employment, under instructions from his master to stop at the College street station to pick up the money and reports of that station to be delivered to the manager óf the Calder avenue station. That task was a part of the master's business. Before it was assigned to Harold, about two weeks before his death, it was performed by one of the other employees. In discharging this task Harold was required to go from his home by the College street station on his way to the Calder avenue station. Harold was not merely on the streets of Beaumont driving his own vehicle on his own time and in his own way in order to reach Calder avenue station, his regular place of employment, but was discharging a special duty assigned to him, which required that he use the street and his car. This conclusion is a reasonable construction of the testimony because Harold needed his car to carry the money and the reports from College street station to the Calder avenue station.

That the manager testified that Harold was doing this task as a personal favor to him was immaterial. This testimony was a mere conclusion of the witness, without support in the evidence. The business did not belong to the manager; his master did not require him to go to the College street station for the money and reports. He had not theretofore performed that task as a part of the duties of his employment as manager, but it had been done for him by one of the employees. The manager wanted the money by 11 o'clock in order to carry it to the bank, as had been his custom for a long time. This task had no element of a personal favor to the manager, but was as much a part of the master's business as dipping the ice cream, sweeping the floor, or any other task performed by Harold.

That Harold was not specially paid for picking up the money and the reports was also immaterial. He was a sort of "handy man," required to work under the direction of the manager at any and every task assigned to him. True, the manager testified that if Harold had refused to stop at the College street station to pick up the money and reports he would not have been fired, but Harold was not so advised. There was nothing in the instructions and request of the manager to advise him that the performance of this task was at his discretion. The fact has great weight that, on one occasion, the manager called him at his home, instructing him to go to the College street station for the money and reports; all subsequent trips for that purpose should be given the same construction. From Harold's standpoint the reasonable conclusion was that he would have lost his job had he refused to go to the College street station to pick up the money and reports. Nugent Sand Co. v. Hargesheimer, 254 Ky. 358, 71 S.W.(2d) 647, 649.

■ The evidence was sufficient to support the conclusion that Harold was *on duty* from the moment he left home on his way to the College street station. The following authorities are interestingly in point: In Maryland Casualty Co. v. Smith (Tex. Civ. App.) 40 S.W. (2d) 913, 914, the facts were as follows: "From the uncontradicted evidence we find the following material facts necessary to the disposition of this appeal: That the motorcycle on which appellee was riding at the time he was injured was owned by him; that under his contract of employment with Cox-Ward Drug Company, he was required to furnish same to be used by him in the performance of his duties, viz., the delivering of packages and parcels for said drug company; that for such services, including the use of said motorcycle in connection therewith, said drug company contracted to pay appellee the sum of $27.50 per week; that said motorcycle was one of the instrumentalities of appellee's employment; that said employer did not furnish a place for the storage of said motorcycle when not in use; that appellee at all times had to care for same so as to have it available for the performance of his duties; that appellee sustained his injuries at 5:45 p. m. September 25, 1928, while riding said motorcycle on a public street in the city of Dallas on his way to work; that at said time appellee was about twenty blocks from his employer's place of business and about one block from his residence; that appellee, under his employment, had definite hours of service, viz., from 7 a. m. to 11 a. m., and from 6 p. m. to 11 p. m., during each twenty-four hours; that at the time appellant was injured he was not engaged in the performance of any duty under his employment, other than he was returning to his work; his next working period beginning at 6 p. m." On these facts the court concluded that the compensation claimant was injured while engaged in or about the furtherance of the affairs or business of his employer and affirmed the judgment of the lower court in his favor. In Maryland Casualty Co. v. Levine (C. C. A.) 67 F.(2d) 816, a servant of the master was directed to leave the master's office and go to his home for the purpose of washing the mas-

ter's car. On his way to perform this duty he was killed by an automobile. Compensation was allowed. In Consolidated Underwriters v. Breedlove, 114 Tex. 172, 265 S. W. 128, 130, the employee was a mechanic, subject to call at any time, and was sent by his employer to see about a battery; returning to his master's shop he stopped at his home for lunch and was injured after lunch, while on his way to the shop. His employer knew that he was to see about the battery while away for lunch and that his errand with reference to the battery would not be completed until he returned to the shop. The Commission of Appeals, holding that he was entitled to compensation, made this statement: "We do not mean to hold that Breedlove was on duty at the very time he was eating his lunch, but we do say that if the matter of getting his lunch had not entered into the trip that he would have been on duty from the time he left the shop until he returned, and we do not think that the matter of his getting his lunch en route made any difference in his status as to being on or off duty while he was traveling, especially in view of the fact that the record fails to show how much additional traveling he had to do in order to go to his lunch." In Texas Employers' Ins. Ass'n v. Herron (Tex. Civ. App.) 29 S.W.(2d) 524, 528, the following quotation from Honnold on Workmen's Compensation was cited with approval: "Where it is the duty of an employee to go from one job to another or to places away from the employer's office and then to return thereto to make a report, he is, at all such times, acting in the course of his employment." See, also, Fidelity Union Casualty Co. v. Carey (Tex. Com. App.) 55 S.W.(2d) 795; Fidelity Union Casualty Co. v. Hammock (Tex. Civ. App.) 5 S.W.(2d) 812; Lloyds Casualty Co. v. Rodriguez (Tex. Civ. App.) 35 S.W.(2d) 261; Safety Casualty Co. v. Gray (Tex. Civ. App.) 67 S. W.(2d) 1057.

The facts of this case distinguish it from Ætna Life Ins. Co. v. Palmer (Tex. Civ. App.) 286 S. W. 283, and the line of authorities generally to the effect that the Compensation Act does not apply where the workman is injured while going to or from his work on his own time and in his own way, for the simple reason that, as already stated, Harold was not directly on his way to the Calder avenue station, but was on a special mission that could be performed only by using the streets of Beaumont and his father's automobile.

That he was using his father's automobile rather than one belonging to the master was immaterial. In Maryland Casualty Co. v. Smith, supra, the employee was injured while riding his own motorcycle. Discussing that fact, the court said: "That the motorcycle was the property of appellee and not that of his employer created no legal distinction, as the relationship of the parties in regard to the use of the motorcycle would be the same in either case. As favorably bearing upon this phase of the case, see Petroleum Casualty Co. v. Green (Tex. Civ. App.) 11 S.W.(2d) 388."

It follows that the judgment of the lower court should be reversed and the cause remanded for a new trial, and it is accordingly so ordered.