**TRAVELERS INSURANCE COMPANY,**
Appellant,

v.

**Ruben JORDAN, Jr., Appellee.**

No. 15666.

Court of Civil Appeals of Texas.

Dallas.

July 22, 1960.

Rehearing Denied Oct. 14, 1960.

Ramey, Brelsford, Hull & Flock, and Donald Carroll, Tyler, for appellant.

Justice, Justice & Kugle, Athens, for appellee.

YOUNG, Justice.

This is a suit for workmen's compensation; Jordan, an employee of Williford Lumber Company, after an unsatisfactory award by the Industrial Accident Board, suing the insurance carrier in District Court to recover compensation for alleged total and permanent disability. On a jury trial, the court rendered judgment for plaintiff, based in part upon the jury answers, awarding plaintiff a recovery for 401 weeks at $27.69 per week from July 21, 1958, date of injury, less sums previously paid by the insurer; the latter duly appealing.

From a series of issues submitted, the jury found that on July 21, 1958 plaintiff, while so employed, sustained accidental injuries, resulting in a total and permanent incapacity to work. Under Issue No. 10, the jury found against plaintiff, seeking payment of weekly installments in a lump sum; and perforce of contentions hereinafter noted, Issues 11, 11a, 12, 13 and 14, together with answers, will be quoted in full:

"Special Issue No. 11: Do you find from a preponderance of the evidence that the Plaintiff, Ruben Jordan, Jr. worked in the employment in which he was working on July 21, 1958, whether for the same employer or not, substantially the whole of the year immediately preceding such date? Answer * * * Yes.

"Special Issue No. 11a: Do you find from a preponderance of the evidence that the Plaintiff, Ruben Jordan, Jr. did not work in the employment in which he was working at the time of his injury whether for the

same employer or not, substantially the whole of the year immediately preceding July 21, 1958. Answer, He did not so work, or, He did so work. Answer: He did so work.

"If you have answered No. 11 'Yes' or 'no'. 11a 'He did so work' and only in such event, then answer:

"Special Issue No. 12: What do you find from a preponderance of the evidence to be the average weekly wage of Ruben Jordan, Jr. during the year immediately preceding July 21, 1958. Answer in Dollars and Cents, if any. Answer: $46.15.

"You are instructed that in determining the Plaintiff's average weekly wage, the rule is to multiply his daily wage during the days he was employed by 300 and divide the sum total by 52. The result will be plaintiff's average weekly wage.

"If you have answered Special Issue No. 11a 'He did not so work' and only in such event, then answer:

"Special Issue No. 13: Do you find from a preponderance of the evidence that any employee of the same class as Ruben Jordan, Jr. worked substantially the whole of the year preceding July 21, 1958, in the same employment in which Ruben Jordan, Jr. was working on July 21, 1958, or in a similar employment to that in which Ruben Jordan, Jr. was working at said time, in the same place in which Ruben Jordan, Jr. was working on July 21, 1958, or in a neighboring place to that in which Ruben Jordan, Jr. was working at said time? Answer Yes or No. Answer: ———.

"If you have answered Special Issue No. 13, 'yes' and only in such event, then answer:

"Special Issue No. 14: What do you find from a preponderance of the evidence to be the average weekly wage of an employee of the same class as Ruben Jordan, Jr., if in answer to Special Issue No. 13 you have found there was such an employee, covering the year immediately preceding July 21, 1958? Answer in Dollars and Cents, if any. Answer: $46.15."

Both plaintiff and defendant filed motions to disregard the foregoing issues and answers; which motions upon hearing were sustained; the court finding that Issues 11, 11a and 12 should be disregarded "because the jury answers to such issues have no support in the evidence"; and further "that Special Issues Numbers Eleven, Eleven–A, Twelve, Thirteen and Fourteen were immaterial and, therefore, should not have been submitted to the jury and should be disregarded, because the uncontroverted and undisputed evidence was to the effect that plaintiff did not work in the employment in which he was working at the time of his injury, either for Williford Lumber Company or other employers, substantially the whole of the year immediately preceding the injury, and, further, because the uncontroverted and undisputed evidence, coming from a disinterested witness, was to the effect that there was another employee of the same class as plaintiff, who worked substantially the whole of the year immediately preceding the accident and injury to plaintiff in the same or in similar employment in the same place, and that such other employee's average daily wage or salary was $8.00, and that his average weekly wage was $46.15, when computed by the method prescribed by Section 1 of Article 8309, Vernon's Annotated Civil Statutes of the State of Texas." Judgment recitals of weekly payments was in the sum of $27.69 being 60% of the average weekly wage of $46.15 as found by the Court.

Summarized, the points of appeal are as follows: Error of Court in rendering judgment (1) based upon a compensation rate of $27.69 per week, because of no jury findings of the component factual elements of wage rate sufficient to justify a judgment for compensation rate in excess of $9 per week; (2) or based upon a compensation rate of $27.69 per week, the component factual elements not having been established as a matter of law; (3, 4) or based on a jury findings of total permanent

incapacity, because of no evidence or insufficient evidence to support such findings; (5) the finding of "permanent" incapacity was so against the great weight and overwhelming preponderance of the evidence as to be clearly wrong; (6) judgment for total and permanent incapacity was excessive; (7, 8, 9) error in excluding testimony of defendant's witness Wood (involving appellee in liquor law violations) such evidence being admissible for limited purpose of (a) impeachment; (b) on issue of manifest hardship and injustice; (10) error in excluding testimony of appellee (on liquor law violations.)

Issues 11, 11a, 12, 13 and 14 relate to Art. 8309, Sec. 1, providing in part: "Average weekly wages" shall mean: * * *

"1. If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"2. If the injured employee shall not have worked in such employment during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or neighboring place, shall have earned in such employment during the days when so employed. * * * 5. The average weekly wages of an employee shall be one-fifty-second part of the average annual wages."

It will be noted that issues 11 and 11a bear upon Sub-sec. 1 above, submitted in affirmative and negative form, each answered affirmatively by the jury or that the claimant "did so work". It was these issues and answers that were the subject of motions to disregard, urged by plaintiff and defend-ant; the court ruling in such connection that same should not have been submitted to the jury because "the uncontroverted and undisputed evidence was to the effect that plaintiff did not work in the employment in which he was working at the time of his injury, either for Williford Lumber Company or other employers substantially the whole of the year immediately preceding his injury." Appellant's initial points are in effect that inapplicability of Sub-sec. 1 of Art. 8309, cannot be so determined as a matter of law under the facts and circumstances of this record; necessitating a summary of the evidence bearing upon these issues.

Ruben Jordan, Jr., age 32 at time of trial, sustained injuries on July 21, 1958 while employed with Williford Lumber Company. Prior thereto he had worked for Harbison-Walker Refractories for some seven years until laid off on September 18, 1957; his work consisting of "off-bearing" bricks from kilns to railroad cars. His next employment was with Mr. York moving houses for about two months, a period of unemployment following. He then worked for Wes Gibbs, two or three days a week for some two months; beginning work with Williford Lumber Company two or three months before date of injury, first as a plumber's helper, but also hauling drilling mud, stacking lumber, loading asphalt, characterizing himself as a kind of general roustabout, working six days a week at $8 per day. His employment with several of above concerns was attested to by witnesses who had worked for them.

Defendant carrier made no effort to controvert Jordan's testimony, or that of other witnesses in support thereof concerning his work record for the year preceding July 21, 1958 and obviously under this evidence, appellee had not worked as a roustabout for a lumber company for substantially the whole of said year preceding injury; his other jobs accounting for some six months of the specified time thus making applicable the provisions of Sub-sec. 2, Art. 8309, V.A.C.S.

■ "It is settled law that plaintiff must recover compensation on the basis of his own earnings for the year preceding his injury while working in the employment in which he was engaged at the time of the injury. Moreover, the burden is upon him to plead and prove that he was not doing the same kind of work during substantially the whole of the year immediately preceding his injuries, as the kind of work in which he was engaged when injured, before he is permitted to prove the average weekly wages of another laborer similarly employed as a basis for computing his compensation." Texas Indemnity Insurance Co. v. Smith, Tex.Civ.App.1934, 73 S.W.2d 578, 579. In Texas Employers' Association v. Allgood, Tex.Civ.App., 252 S.W.2d 589, 590 the court approved a submission under Sub-sec. 2, because * * * "it was admitted by appellee and uncontroverted by the appellant, that he had not done similar work substantially the whole of the year preceding his injury." Appellant strongly argues that the general rules discussed in Texas Employers' Insurance Association v. Roberts, 135 Tex. 123, 139 S.W.2d 80, 84 is controlling here that "the * * * uncorroborated testimony of a party to a suit will not authorize or support an instructed verdict." There Sub-sec. 2 of Art. 8309 was involved; where here it was Sub-sec. 1; appellee's detail of his own work record being attested by several witnesses. Where testimony of the interested party is corroborated, even circumstantially, said general rule is held to be inapplicable. Simonds v. Stanolind Oil & Gas Company, 134 Tex. 332, 136 S.W.2d 207. And it is further observed by Chief Justice Hamilton in I. C. T. Insurance Co. v. Wineman, Tex. Civ.App., 308 S.W.2d 549, 552 (citing numerous authorities) that "the tendency shown by recent decisions of our courts is to require slight proof of negative section 1,

Subdivision 1 and 2 of said Article 8309, especially where no real contest is made of the wage issues." [1]

■ Bearing on Subdivision 2 and Issue 14 of the Court's charge, Jerry Franks, a witness for appellee, testified in substance: That he had worked as a general roustabout for Athens Lumber Company for about four years, working daily, six days a week every week from July 21, 1957 to July 21, 1958, being paid during such period $48 per week and over as many as 300 days, but not having worked more than 312 days. Issue 13, relating to an employee of the same class as appellee, conditionally submitted, was not answered, but issue 14 (average weekly wage of Jerry Franks) was answered $46.15. This was obviously arrived at by calculating the daily wage of the witness at $8, multiplying by 300 and dividing the latter sum by one fifty-second with a quotient of $46.15, the method prescribed by Art. 8309, Sec. 1; 60% of which was $27.69 per week, basis of the court's judgment. The court reached the same result in sustaining motions of parties to disregard issues 11, 11a, 12, 13 and 14; since the testimony of Franks was sufficient to establish an average weekly wage (Sec. 2) as a matter of law.

■ Appellant admits that Jerry Franks was a disinterested witness, his testimony standing uncontradicted and undisputed in the record; arguing however that Franks was not a Subdivision 2 (daily wage) employee as a matter of law in that he was on a weekly wage and that under Texas Employers' Association v. Clack, 134 Tex. 151, 132 S.W.2d 399, 401, Sec. 2 is not applicable to salaried employees. But to the contrary, the Clack case interprets Sec. 2 as providing an alternative method of determining such other em-

---

1. In appellant's original motion to disregard jury findings, it alleged among other grounds "The uncontradicted and undisputed evidence showed that the plaintiff, Ruben Jordan, Jr. did not work in the employment in which he was engaged when injured, whether for the same employer or not, for substantially the whole of the year immediately preceding July 21, 1958 * * *." In its amended motion to disregard jury findings, however, appellant did not repeat this ground.

ployees (Franks) average weekly wage; holding that "It seems to us clear that the statute contemplates that in all cases *where the annual earnings or salary can be ascertained with reasonable certainty, either by taking three hundred times the daily wages, or by taking the actual annual earnings or salary* which the employee has received during the preceding year, when not employed upon a daily basis, but working for substantially the whole of the year upon a salary basis, *said annual salary* or earnings becomes the determining factor or basis of compensation; and the weekly wages shall be one-fifty-second part of said annual earnings or salary." (Emphasis ours.) Under this alternative method, the average weekly wage of Franks could have been computed at $48, 60% of which was $28.80; the court thus having fixed a lower compensation rate than justified by the testimony. Points one, two and six are overruled.

■ Appellant in successive points, challenges the jury findings of total, permanent incapacity, on grounds of no evidence, or insufficient evidence, or that the same was so against the overwhelming weight of the same as to be manifestly wrong. It is admitted that Jordan, while working in a railroad car, unloading asphalt, sustained an injury to his back of some severity, and facts of the occurrence need not be further detailed.

Ruben Jordan testified that before the accident he was a normally active person, that afterwards he could not lift anything, back hurting at night, and unable to "half rest". He attempted house work but back hurting and leg "seems to draw"; that using a cane helped him some; that the pain had not left him at the time of trial along with stiffness of back. He wore a back brace, prescribed by Dr. Sigler; stating that his back hurt on coughing or sneezing, the pain going down leg to toes, leg feeling numb on outer side. Dr. Sigler examined Jordan on October 3, 1958. On that occasion the patient's back was stiff along with muscle spasms; that pain was indicated on Lasegue or straight leg raising test; done by elevating limb with patient lying on back, resulting in a stretch of sciatic nerve, showing nerve root irritation; other tests being suggestive of similar irritation in lower part of back. X-ray findings of Dr. Sigler were decreased lumbo-sacral interspace and overriding of articular facets in appellee's back; his diagnosis being "strain and instability in lower part of back and probable rupture of an intervertebral disc." On second examination, two days before the trial, he made the same findings and further that appellee had a loss of right patella reflex, indicative of "some progression of his condition." In answer to a hypothetical question, Dr. Sigler attributed Jordan's condition to his injury; that he did not think the patient capable of work involving lifting or stooping, expressing doubt that there would be much change of condition without treatment. Dr. R. E. Henderson, who had been treating appellee, testified to substantially the same findings; stating "I don't think he is capable of doing manual labor." And in answer to a question of probable continuance of condition that "I think it is permanent unless it can be remedied by what is called a fixation of the back by surgery;" appellee having testified that he had not been offered a back operation by the carrier.

The *foregoing evidence is deemed sufficient* to sustain the jury findings in question; giving full effect, as we must, to the established rule that "If, discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict." Traders & General Insurance Company v. Durrette, Tex.Civ.App. 1953, 258 S.W.2d 346, 347.

■ Appellant's remaining points relate to the following: During course of

trial, appellee filed two motions to suppress any testimony involving Jordan in liquor law violations prior to date of injury, or subsequent thereto. These motions being sustained, appellant, for purpose of perfecting bill of exceptions, presented the testimony of Wayne Allan Wood, Inspector, State Liquor Board, who testified to purchase of two half pints of whiskey from appellee on January 30, 1959; the evidence being offered generally on issue of manifest hardship (Issue 10) and as basis for impeachment. Jordan, called to the stand in connection with the bill, testified to having been convicted of a number of misdemeanor liquor law violations; denying however any such violation after date of injury. "The rule is that where the witness has been legally charged by indictment, complaint, or information and complaint, with an *offense involving moral turpitude,* and has been legally convicted of such offense in a court of competent jurisdiction, or where the witness has been so legally charged with such offense, and presently admits his guilt, then such matters are admissible in evidence touching his credibility as a witness. Kennedy v. I. G. N. R. Co., (Tex. Com.App.) 1 S.W.(2d) 581. Otherwise, in the impeachment of a witness, the inquiry should be confined to his general reputation for truth and veracity, and should not be extended to his general moral character. M. K. & T. R. Co. v. Creason, 101 Tex. 335, 107 S.W. 527, and authorities there cited." (Emphasis ours). Texas & N. O. Ry. Co. v. Parry, Tex.Com.App.1929, 12 S.W.2d 997, 1001. The quoted holding has since been consistently followed by our appellate Courts; also that violations of the State Liquor Laws do not involve *moral turpitude.* Hightower v. State, 73 Tex.Cr.R. 258, 165 S.W. 184; Burton v. State, 146 Tex.Cr.R. 446, 176 S.W.2d 197. Nor is appellant in position to claim that harm resulted from exclusion of the evidence in question on issue of lump sum award (manifest hardship;) that issue having been determined adverse to appellee. Rule 434, Texas Rules of Civil Procedure.

All points of appeal, upon consideration, are overruled and judgment of the trial court affirmed.

CRAMER, J., not sitting.